313 F.3d 704
 CANTOR FITZGERALD INCORPORATED, a Nevada Corporation, Iris Cantor, individually, as trustee of the Cantor Family Trust and as executor of the will and codicil of B. Gerald Cantor, Plaintiffs-Appellants,
v.
Howard LUTNICK, Stephen Merkel, Stuart Fraser, Philip Ginsberg, Defendants-Appellees.
 Docket No. 01-7291.
 United States Court of Appeals, Second Circuit.
 Argued: November 30, 2001.
 Decided: December 16, 2002.
 
 COPYRIGHT MATERIAL OMITTED Joshua T. Rabinowitz, Slotnick, Shapiro & Crocker, LLP, (Barry I. Slotnick and Michael Shapiro, on the brief), New York, NY, for Plaintiffs-Appellants.
 Karen L. Valihura, Skadden, Arps, Slate, Meagher & Flom, LLP, (Thomas J. Schwarz, Joseph M. Asher, Skadden, Arps, Slate, Meagher & Flom, LLP, New York, NY; Leonard P. Stark, Jennifer C. Kelleher, Skadden, Arps, Slate, Meagher & Flom, LLP, Wilmington, DE, on the brief), Wilmington, DE, for Defendants-Appellees.
 Before: WALKER, Chief Judge, JACOBS and SACK, Circuit Judges.
 JOHN M. WALKER, JR., Chief Judge.
 
 
 1
 In this diversity action, plaintiffs-appellants Cantor Fitzgerald Incorporated ("CFI") and Iris Cantor (collectively, "plaintiffs") appeal from the March 16, 2001 judgment of the District Court for the Southern District of New York (Loretta A. Preska, District Judge) granting the motion of defendants-appellees Howard Lutnick, Stephen Merkel, Stuart Fraser, and Philip Ginsberg (collectively, "defendants") to dismiss plaintiffs' complaint asserting claims of breach of fiduciary duty under Fed.R.Civ.P. 12(b)(6) as barred by the statute of limitations. See Cantor Fitzgerald Inc. v. Lutnick, No. 99 Civ. 4008, 2001 WL 111200, at *1, *4 (S.D.N.Y. Feb. 8, 2001). Although the district court erred by applying federal statute of limitations law in a diversity case, we find that plaintiffs' suit is nevertheless time barred under the applicable state statute of limitations. Accordingly, we affirm the district court's judgment.
 
 BACKGROUND
 
 2
 Accepting the truth of plaintiffs' factual allegations at the pleading stage, Dawes v. Walker, 239 F.3d 489, 491 (2d Cir.2001), the following account is drawn substantially from CFI's complaint.
 
 
 3
 CFI is a Nevada corporation with offices in Los Angeles, California. Until September 1992, CFI was a holding company that owned various operating companies engaged primarily in the brokerage of securities and the sale of financial market data. In September 1992, CFI transferred substantially all of its assets to Cantor Fitzgerald Limited Partnership ("CFLP"), a Delaware limited partnership. As a result of this reorganization, Iris and G. Bernard Cantor (Iris Cantor and Cantor, respectively) became the sole owners of CFI, which became the managing general partner of CFLP. Defendants Lutnick, Fraser, and Ginsberg became partners in CFLP. Cantor died in July 1996. At the present time, Iris Cantor, a California resident, is the trustee of the Cantor Family Trust, which holds CFI's shares.
 
 
 4
 During the relevant period, defendants Lutnick, Fraser, and Ginsberg were officers, directors, or both, of CFI, and all were citizens of New York. Merkel, also of New York, was general counsel of CFLP, in which capacity he provided legal advice to CFI. During the relevant period he also assumed the positions of secretary and senior vice president of CFI. Plaintiffs claim that defendants owed fiduciary duties to CFI and its shareholders, the Cantors.
 
 
 5
 Under the Agreement of Limited Partnership of Cantor Fitzgerald, L.P., dated September 25, 1992 (the "1992 Partnership Agreement"), section 3.03(a) released CFI from its fiduciary duty not to compete against CFLP, as follows:
 
 
 6
 Nothing contained in this Agreement shall be deemed to preclude CFI or any Affiliate of CFI from engaging or investing in or pursuing, directly or indirectly, any interest in other business ventures of every kind, nature or description, including those which compete with the Partnership, independently or with others; provided, however, that upon the occurrence of a Change of Control CFI shall be so precluded.
 
 
 7
 (emphasis added). Thereafter, Cantor competed with CFLP through Market Data Corporation ("MDC"), an "affiliate" of CFI as defined by the 1992 Partnership Agreement.
 
 
 8
 The dispute in this case stems from amendments made to the 1992 Partnership Agreement in 1993 that limited the ability of CFI and its affiliates to compete with CFLP. Cantor and all of the defendants except Fraser played significant roles in the amendment process. Cantor received the final draft, approved on June 3, 1993, and the Cantors both executed consents in which they acknowledged having received, reviewed, and consented to the 1993 amendments.[1]
 
 
 9
 Among the 1993 amendments, two changes were made that limited the ability of CFI and its affiliates to compete with CFLP. First, the language in section 3.03(a) that had previously permitted competition was removed and was replaced by language that precluded "Competitive Activities":
 
 
 10
 Nothing contained in this Agreement shall be deemed to preclude CFI or any Affiliate of CFI from engaging or investing in or pursuing, directly or indirectly, any interest in other business ventures of every kind, nature or description, independently or with others; provided, that such activities do not constitute Competitive Activities.
 
 
 11
 Agreement of Limited Partnership of Cantor Fitzgerald, L.P. Amended and Restated as of June 3, 1993 (the "1993 Partnership Agreement") § 3.03(a) (emphasis added). The term "Competitive Activities" is defined to include "directly or indirectly engag[ing] in, represent[ing] in any way, or [being] connected with, any Competing Business." Id. § 11.04(c). A "Competing Business," in turn, is broadly defined to include any activity that:
 
 
 12
 (i) involves the conduct of the wholesale or institutional brokerage business, (ii) consists of marketing, manipulating or distributing financial price information of a type supplied by the Partnership... to information distribution services or (iii) competes with any other business conducted by the Partnership ... if such business was first engaged in by the Partnership ... after the Restatement Date.
 
 
 13
 
 Id.
 
 
 
 14
 In the second relevant change worked by the amendments, section 3.03(a) was supplemented with a new subsection, section 3.03(b), which provided that each partner "acknowledges its duty of loyalty to the Partnership and agrees to take no action to harm (or that would reasonable [sic] be expected to harm) the Partnership or any Affiliated Entity." Id. § 3.03(b).
 
 
 15
 The gravamen of CFI and Iris Cantor's complaint is that for almost five years appellees exploited and failed to correct Cantor's mistaken belief that CFI's right to cause MDC to compete with CFLP survived the 1993 amendments. Plaintiffs claim that Lutnick approved the 1993 amendments, which he believed limited the right to compete, without authorization from and contrary to the wishes of Cantor. Further, plaintiffs claim that the defendants failed to inform Cantor of these restrictions, or at least their understanding of them, even as he continued to allow MDC to compete with CFLP. According to plaintiffs, as part of a "second campaign of deception" aimed at preventing Cantor from discovering the changes made by the 1993 amendments, defendants prepared and in some cases circulated documents pertaining to various securities offerings by CFLP and MDC that stated, or gave the impression, that MDC could compete with CFLP. These documents reinforced Cantor's belief that MDC had the right to compete under the 1993 Partnership Agreement and prevented him from taking steps to correct the amendments to restore that right.
 
 
 16
 Based on the foregoing allegations, plaintiffs claimed in the first count of their complaint that the defendants breached their fiduciary duties to CFI and its shareholders, the Cantors. In the second count, plaintiffs asserted that Lutnick breached his fiduciary duties by taking advantage of Iris Cantor's ignorance of the 1993 Partnership Agreement's restrictions on competition during negotiations to settle one of two previous lawsuits between the parties in Delaware Chancery Court.
 
 
 17
 The first Delaware action was commenced on March 6, 1996 and settled in May 1996. As part of the settlement agreement, CFI exchanged its general partnership units in CFLP for newly created limited partnership units. CFI and Iris Cantor maintain that, by keeping silent during the settlement negotiations about the restrictions on CFI's and MDC's ability to compete, Lutnick unfairly caused the Cantors and CFI to exchange their general partnership units at a "deep discount" price that did not reflect that the Cantors were relinquishing the right to compete with CFLP.
 
 
 18
 CFI and Iris Cantor assert that they first discovered defendants' breaches of their fiduciary duties in March 1998, when the second suit was commenced by CFLP in Delaware Chancery Court. In this action, CFLP sued CFI and Iris Cantor for violating the 1993 Partnership Agreement by causing or permitting MDC to license an automated electronic brokerage system to one of CFLP's competitors. In a post-trial opinion, the Chancery Court found that CFI's conduct was an "egregious breach of the Partnership Agreement," and rejected Iris Cantor's counterclaims seeking to reform the 1993 Partnership Agreement to conform to her and CFI's alleged understanding that the agreement did allow MDC to compete with CFLP.
 
 
 19
 On June 3, 1999, plaintiffs CFI and Iris Cantor commenced this diversity action charging defendants with fiduciary breaches in failing to disclose the 1993 Partnership Agreement's non-compete provision. Defendants moved to dismiss on the basis, among other reasons, that all of plaintiffs' causes of action accrued between June 1993 (when the 1992 Partnership Agreement was amended) and May 1996 (when the first Delaware action was settled) and, therefore, were barred by the applicable three-year statute of limitations. The district court applied California's and Nevada's three-year statute of limitations period and the federal discovery rule to determine when the limitations period started to run, and granted defendants' Rule 12(b)(6) motion to dismiss the complaint as time barred. Cantor Fitzgerald, 2001 WL 111200, at *2, *4. This appeal followed.
 
 DISCUSSION
 
 20
 This court reviews a dismissal under Fed.R.Civ.P. 12(b)(6) de novo, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir.2002). However, "[w]e give no credence to plaintiff's conclusory allegations." Dawes, 239 F.3d at 491.
 
 
 21
 On appeal, plaintiffs argue that the district court erred by: (1) applying the federal discovery rule in a diversity case; (2) failing to assume the truth of appellants' claims and give them the benefit of all reasonable inferences on a motion to dismiss; and (3) improperly giving collateral estoppel effect to several of the Delaware Chancery Court's findings. Plaintiffs contend that when properly assessed under Nevada or California statute of limitations law, their claims are timely.
 
 
 22
 We agree that the district court erred by applying federal law to determine when the statute of limitations began to run; we conclude, however, that plaintiffs' claims are nevertheless untimely under state law.
 
 
 23
 As all parties acknowledge, it is well established that in diversity cases state law governs not only the limitations period but also the commencement of the limitations period. See Ragan v. Merchs. Transfer & Warehouse Co., 337 U.S. 530, 533, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949); see also Guar. Trust Co. v. York, 326 U.S. 99, 109-10, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). The district court appears to have followed the rule for § 1983 actions, in which a state limitations period is borrowed but federal law governs when that state limitations period begins to run. See Cantor Fitzgerald, 2001 WL 111200, at *2 (citing Albright v. Oliver, 510 U.S. 266, 280 n. 6, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (Ginsburg, J., concurring)). It is appropriate to use federal rules to determine when the limitations period begins to run for a claim under 42 U.S.C. § 1983 because the cause of action is created by federal law. When federal jurisdiction is based on diversity, as it is in this case, however, state substantive law must govern. See Guar. Trust, 326 U.S. at 109-10, 65 S.Ct. 1464; Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79-80, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). A state's rules providing for the start and length of the statute of limitations is substantive law. See, e.g., Klehr v. A.O. Smith Corp., 87 F.3d 231, 235 (8th Cir.1996), aff'd, 521 U.S. 179, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997); Nev. Power Co. v. Monsanto Co., 955 F.2d 1304, 1306 (9th Cir.1992). As it turns out, the outcome in this case is the same under applicable state law governing when a limitations period begins to run as under federal law.
 
 
 24
 To determine which state's law applies, a federal court sitting in diversity must apply the conflict-of-laws rules of the state in which the federal court sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under New York's "borrowing statute," N.Y. C.P.L.R. § 202,[2] a case filed by a non-resident plaintiff requires application of the shorter statute of limitations period, as well as all applicable tolling provisions, provided by either New York or the state where the cause of action accrued. Stuart v. Am. Cyanamid Co., 158 F.3d 622, 627 (2d Cir.1998); Antone v. Gen. Motors Corp., 64 N.Y.2d 20, 484 N.Y.S.2d 514, 473 N.E.2d 742, 747 (1984). New York follows "the traditional definition of accrual — a cause of action accrues at the time and in the place of the injury." Global Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525, 693 N.Y.S.2d 479, 715 N.E.2d 482, 485 (1999). Where, as here, the "injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." Id.
 
 
 25
 Because Iris Cantor resides in California and CFI is a Nevada corporation with offices in California, plaintiffs' alleged economic injury was sustained and the cause of action accrued in either Nevada or California. Under New York's borrowing statute, we look therefore to California or Nevada law to determine when the three-year statute of limitations began to run. Because, as we discuss below, California and Nevada have the same rules for determining when the statute of limitations commences, we need not decide which state's rule applies.
 
 
 26
 Both California and Nevada provide that in cases involving breaches of fiduciary duty, the statute of limitations begins to run when plaintiffs were on "inquiry notice," that is, when they actually "discover[ed] or should have discovered all facts essential to [their] cause of action" through the exercise of "reasonable diligence." April Enters., Inc. v. KTTV, 147 Cal.App.3d 805, 195 Cal.Rptr. 421, 432-33 (1983); accord Golden Nugget, Inc. v. Ham, 98 Nev. 311, 646 P.2d 1221, 1223 (1982) (per curiam).
 
 
 27
 Plaintiffs' principal argument[3] on appeal is that their claims, raised in a complaint filed in June 1999, are not barred by the three-year statute of limitations because plaintiffs were not on inquiry notice of defendants' breaches or their own injuries therefrom until October 1997 and March 1998, respectively. Specifically, plaintiffs claim that they had no reason to believe that the 1993 amendments affected MDC's right to compete until Iris Cantor received a letter to that effect from Merkel in October 1997, and that they had no reason to learn of their injury caused by defendants' breaches until discovery was conducted in the second Delaware action in March 1998. To bolster their argument, plaintiffs further contend that the district court wrongly accorded preclusive effect to certain of the Delaware Chancery Court's findings; failed to credit plaintiffs' factual allegations and draw reasonable inferences in their favor on a motion to dismiss; and failed to properly apply the discovery rule, a relaxed duty of diligence, and the doctrine of fraudulent concealment. We disagree in all respects.
 
 
 28
 The basic common law rule, the so-called "date of injury" rule, is that the statute of limitations period commences when the cause of action accrues. See Cal. Sansome Co. v. U.S. Gypsum, 55 F.3d 1402, 1406 (9th Cir.1995) (reciting California law); Siragusa v. Brown, 114 Nev. 1384, 971 P.2d 801, 806-07 (1998). Several jurisdictions, including California and Nevada, however, recognize an exception to the general rule for certain causes of action such that the limitations period does not begin until the plaintiff discovers or reasonably should have discovered the facts supporting the cause of action. See Siragusa, 971 P.2d at 806-07; accord Samuels v. Mix, 22 Cal.4th 1, 91 Cal.Rptr.2d 273, 989 P.2d 701, 706 (1999).
 
 
 29
 The discovery rule "is generally applicable to confidential or fiduciary relationships." Prudential Home Mortgage Co. v. Superior Court, 66 Cal.App.4th 1236, 78 Cal.Rptr.2d 566, 571 (1998); accord Golden Nugget, 646 P.2d at 1223. Further, as plaintiffs point out, "when a potential plaintiff is in a fiduciary relationship with another individual, that plaintiff's burden of discovery is reduced." Sherman v. Lloyd, 181 Cal.App.3d 693, 226 Cal.Rptr. 495, 498 (1986); accord Golden Nugget, 646 P.2d at 1223-24. In such cases, a plaintiff "is entitled to rely on the statements and advice provided by the fiduciary," Sherman, 226 Cal.Rptr. at 498, and "if the delay in commencing an action is induced by the conduct of the defendant, [the defendant] cannot avail himself of the defense of the statute [of limitations]," Cross v. Bonded Adjustment Bureau, 48 Cal.App.4th 266, 55 Cal.Rptr.2d 801, 809 (1996) (second alteration in original) (internal quotation marks omitted).
 
 
 30
 Although the discovery rule is relaxed under such circumstances, a plaintiff is not relieved of his duty to exercise reasonable diligence. Under California law, "even in cases involving a fiduciary relationship, when a plaintiff becomes cognizant of facts `which would make a reasonably prudent person suspicious,' plaintiff's duty to investigate those facts becomes manifest and plaintiff may be charged with the awareness of such facts as an investigation would have discovered." Sipes v. Equitable Life Assurance Soc'y, No. C-94-3868, 1996 WL 507308, at *8 (N.D.Cal. Aug. 13, 1996) (quoting Bedolla v. Logan & Frazer, 52 Cal.App.3d 118, 131, 125 Cal.Rptr. 59 (1975)); see also Cal. Sansome, 55 F.3d at 1409 n. 12 (noting that "discovery or inquiry notice of the facts terminates the tolling"). Thus, the statute of limitations "`period begins once the plaintiff has notice or information of circumstances to put a reasonable person on inquiry.'" Cross, 55 Cal.Rptr.2d at 809 (quoting Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 245 Cal.Rptr. 658, 751 P.2d 923, 927-28 (1988)). Nevada law is substantially the same. See Shupe v. Ham, 98 Nev. 61, 639 P.2d 540, 542 (1982). Where it is evident from the face of the complaint that a plaintiff cannot satisfy this burden, a court can decide as a matter of law whether plaintiff discovered or should have discovered the cause of action outside the limitations period. See CAMSI IV v. Hunter Tech. Corp., 230 Cal.App.3d 1525, 282 Cal.Rptr. 80, 86-87 (1991); Siragusa, 971 P.2d at 812.
 
 
 31
 In this case, appellants have failed to meet even the relaxed standards of the discovery rule that apply in the context of a fiduciary relationship. Like the district court, we hold that plaintiffs and Cantor reasonably should have discovered that the 1993 amendments took away MDC's right to compete by May 1996 at the latest. On this motion to dismiss, we assume the truth of plaintiffs' allegation that they were entitled to expect that their fiduciaries would preserve MDC's right to compete in the 1993 amendments, as Cantor allegedly told them to do. See Prudential Home Mortgage, 78 Cal.Rptr.2d at 572 (plaintiffs were "entitled to expect [defendants] would perform an act they were required to perform"); Golden Nugget, 646 P.2d at 1223-24. But the consents executed by the Cantors acknowledged that they had received, reviewed, and consented to the 1993 amendments. The changes made by the amendments at the very least should have aroused a suspicion that the ability of MDC to compete under the Partnership Agreement had been altered and, given the asserted importance of this right to Cantor, provoked some inquiry. Not only did the amendments eliminate the language that authorized competition; they substituted language expressly prohibiting "Competitive Activities" and added a subsection in which the partners acknowledged their duty of loyalty and agreed not to harm the partnership. Contrary to plaintiffs' claim, this conclusion does not depend on any collateral estoppel effect of the findings of the Delaware Chancery Court. Although that court appears to have denied many of the same claims that plaintiffs raise on this appeal, it is unclear whether the Chancery Court's judgment has been reduced to a final judgment such that it would be accorded preclusive effect under Delaware law. We see no need to try to unravel the procedural intricacies of the parties' complicated Delaware litigation, however, because plaintiffs' assertion of belated discovery of their claims is belied by the face of their complaint.
 
 
 32
 Plaintiffs were also put on inquiry notice during the settlement negotiations that concluded the first Delaware action in May 1996. It is evident from plaintiffs' complaint that during these negotiations they had reason to be concerned with the 1993 Partnership Agreement in general and its competition provisions in particular. The complaint alleges that plaintiff CFI was aware of the possibility that the exchange of general for limited partnership units pursuant to the proposed settlement "would constitute a Change of Control under the Partnership Agreement, [so that] the Cantors ... faced the risk that they would become subject to the economic consequences of engaging in Competitive Activities," as provided by the 1992 Partnership Agreement's original version of section 3.03(a). The complaint further alleges that at that time plaintiffs took measures to preserve their right to compete.
 
 
 33
 Under these circumstances, a plaintiff who reviewed the amendments, as the Cantors's consents indicate that they did, would have no excuse for not noticing and inquiring into the apparent restrictions on competition contained in plain terms in the 1993 Partnership Agreement. Yet, as the district court correctly found, plaintiffs have failed to plead any exercise of reasonable diligence and instead allege only that they relied on defendants' silence. Cantor Fitzgerald, 2001 WL 111200, at *3 n. 4. Accordingly, we easily conclude, as did the district court, that plaintiffs were on inquiry notice by May 1996 at the latest, and that their June 1999 complaint was therefore filed outside of the three-year statute of limitations and was untimely.
 
 
 34
 Finally, we reject plaintiffs' argument that they are entitled to have the statute of limitations tolled under the doctrine of fraudulent concealment. As we have concluded, regardless of defendants' silence, plaintiffs were put on inquiry notice no later than May 1996. "The doctrine of fraudulent concealment [for tolling the statute of limitations] does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim." Rita M. v. Roman Catholic Archbishop, 187 Cal.App.3d 1453, 232 Cal.Rptr. 685, 690 (1986) (alteration in original); Siragusa, 971 P.2d at 807 (holding that "intentional concealment ... [does] not excuse [a plaintiff's] failure to exercise due diligence").
 
 
 35
 To recap, the district court erred by applying federal law in this diversity action to determine when the statute of limitations period began to run. Nevertheless, when analyzed under the applicable state law, we find that plaintiffs were on inquiry notice no later than May 1996, and that therefore this action, filed June 3, 1999, is barred by the three-year statute of limitations under either California or Nevada law.
 
 CONCLUSION
 
 36
 The judgment of the district court is affirmed.
 
 
 
 Notes:
 
 
 [1]
 We consider the consents on this motion to dismiss because we deem them incorporated into the Partnership Agreement and, hence, into plaintiffs' complaint as wellSee Chambers v. Time Warner, Inc., 282 F.3d 147, 153-54 (2d Cir.2002).
 
 
 [2]
 N.Y. C.P.L.R. § 202 reads:
 An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.
 
 
 [3]
 In their reply brief and at oral argument, plaintiffs claimed that defendants failed to allege in their motion to dismiss the damage element of breach of fiduciary duty, and hence appellants' causes of action, accrued before the cut-off date of June 4, 1996. Because this claim was first raised in plaintiffs' reply brief we need not consider itSee O'Hara v. Weeks Marine, Inc., 294 F.3d 55, 67 n. 5 (2d Cir.2002). In any event, the claim is meritless. Plaintiffs have claimed that they were harmed by March 6, 1996, when CFI lost control of CFLP, which precluded Cantor from seeking to restore CFLP's right to compete. Plaintiffs have further alleged that additional damages were incurred sometime between March and May 1996, when, in the course of settlement negotiations, Lutnick failed to apprise Iris Cantor that her limited partnership units of CFI lacked the right to cause MDC to compete, and thereby obtained the general partner shares at a "discount."