# United States Court of Appeals

## For the First Circuit

No. 02-2538

BRENDA LOGUIDICE,

Plaintiff, Appellant,

v.

METROPOLITAN LIFE INSURANCE COMPANY
and STEVEN ANASTASIA,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Frank H. Freedman, U.S. District Judge]

Before

Lipez, Circuit Judge,
Porfilio,* Senior Circuit Judge,
and Howard, Circuit Judge.

Kenneth R. Behrend, with whom Behrend & Ernsberger, P.C., were
on brief, for appellant.
B. John Pendleton, Jr., with whom McCarter & English, LLP,
were on brief, for appellees.

July 14, 2003

_____*Of the Tenth Circuit, sitting by designation.

**HOWARD**, **Circuit Judge**.  Plaintiff Brenda Loguidice appeals the district court's entry of summary judgment in favor of defendants Metropolitan Life Insurance Company ("MetLife") and Steven Anastasia on the ground that her claims against them were brought after the expiration of the applicable Massachusetts statute of limitations.  The principal issue is whether Loguidice has adduced evidence from which a fact finder could conclude that her otherwise untimely claims are saved by the Commonwealth's "discovery rule."  While we are troubled by the alleged events giving rise to this lawsuit, we see no basis for applying the discovery rule to Loguidice's claims.  We therefore affirm the district court's judgment.

I.

We primarily take the facts from the first of the district court's two summary judgment rulings, see infra, construing the record in the light most favorable to Loguidice and resolving all factual disputes in her favor.  E.g., Dwan v. City of Boston, 329 F.3d 275, 277 (1st Cir. 2003).  In any event, most of the following facts are undisputed.

At some point in 1991, Loguidice, a nurse and the divorced mother of two, received a letter from MetLife's South East Home Office in Tampa, Florida.  The letter encouraged Loguidice to learn more about a "retirement plan" that MetLife had designed especially for nurses.  At the time, nurses frequently lacked

-2-

retirement plans at their places of employment. Loguidice expressed interest in learning more about MetLife's program. In November 1991, Anastasia, who was then an account representative working out of MetLife's Tampa office, visited Loguidice in her home in Agawam, Massachusetts.

During the meeting, Anastasia held himself out as a specialist in retirement programs designed to meet the needs of nurses. He presented Loguidice with a scripted sales pitch, using a folder of information (including newspaper articles and promotional materials) that was arranged so as to emphasize to nurses the importance of retirement planning and the strengths of MetLife. Within the twenty-two pages of material that comprised the folder, there is very little mention of life insurance. This is more than a little surprising because Anastasia's objective was to sell Loguidice a whole life insurance policy.[1]

At some point during the meeting, the issue of life insurance did come up. Loguidice conceded in her deposition that Anastasia informed her (after she had told him that she did not want or need life insurance) that there was a life insurance component to the plan. Documentary evidence reveals that Anastasia also asked Loguidice a number of the health and lifestyle questions

---

[1]A whole life insurance policy provides a death benefit and builds cash value (which is available to the insured during her lifetime) as premiums are paid. MetLife whole life policyholders also are eligible to receive dividends if MetLife declares any.

that typically are asked in connection with applications for life insurance. Nonetheless, Anastasia's emphasis was at all times on the retirement planning in which Loguidice had expressed an interest. At the conclusion of the meeting, Loguidice signed a document with the heading "Application for Life Insurance" that authorized MetLife to deduct $100 per month from her checking account to pay the premiums on a whole life policy with a face value of $52,096. Because Loguidice was rushing to bring the meeting to a conclusion, she did not read the application. Instead, she merely signed on the signature line at which Anastasia was pointing.

After making the sale, Anastasia left Loguidice with a brochure titled "Nurses Insured Retirement Plan." The brochure mirrored the folder in that it emphasized retirement planning and barely even hinted that "the plan" was, in actuality, a life insurance policy. For example, the brochure stated that "Metropolitan's Nurses Insured Retirement Plan is a convenient way for you to accumulate cash for the future you deserve," and that "we can help you build a solid foundation of financial security with our Nurses Insured Retirement Plan, which can help you accumulate the money you need, tax-deferred, for your retirement years." The closest the brochure came to indicating that the plan was no more than a whole life policy is a statement included in an itemized summary of five benefits of the "new [our emphasis]

Insured Retirement plan": "[The plan provides t]ax deferred accumulation while providing a life insurance benefit."

Two weeks after their initial meeting, Anastasia returned to Loguidice's home to deliver "the plan" she had purchased. Anastasia had with him a folder containing the same documents that he had used in his previous presentation. On a computer print-out near the back, Anastasia had highlighted the anticipated value of "the plan" when Loguidice turned 65 -- $66,699 -- under a column titled "Illustrative Cash Value." During this second meeting (which was quite brief), Anastasia showed Loguidice the highlighted figure. But Anastasia did not review the details of the actual insurance policy that Loguidice had purchased. Instead, he tucked the policy itself into a sleeve in the back of the folder and left the folder with Loguidice. Loguidice did not look at the folder again until after she had filed suit some four and one-half years later.

For approximately the next two and one-half years, Loguidice made her monthly $100 premium payments. During this time, Loguidice did not know that she was making premium payments on a whole life insurance policy. Rather, she thought that she was contributing to a "retirement plan" with a life insurance component. Then, in May 1994, Loguidice read a newspaper article detailing an impending class-action settlement involving MetLife and nurses who had purchased whole life policies after being led to

believe that they were investing in retirement or savings plans. Shortly thereafter, Loguidice stopped paying her monthly premiums and called MetLife to ask that her policy be cancelled. MetLife did not cancel Loguidice's policy. Instead, per language in the policy governing unpaid premiums, MetLife began using the cash value that had accumulated in the policy to pay Loguidice's premiums as they became due. On September 18, 1996, with its accumulated cash value exhausted, the policy lapsed.

Loguidice opted out of the class-action settlement and, in May 1996, initiated this diversity action in the United States District Court for the Western District of Pennsylvania. Her complaint asserted claims for breach of contract; breach of the duty of good faith and fair dealing; fraud and deceit; negligent supervision; negligent misrepresentation; negligence per se; breach of fiduciary duty; and violation of various Massachusetts consumer protection statutes.[2] Following a transfer to the district court from which this appeal was taken and the close of discovery, MetLife moved for summary judgment, challenging the viability of the claims on evidentiary and, as to Loguidice's tort and statutory claims, statute of limitations grounds. Anastasia, acting pro se, joined in MetLife's motion. On March 16, 1999, the court granted the motion on all claims except those for fraud and deceit, breach

_____

[2]The parties reasonably have agreed that Massachusetts law governs this dispute, so we follow their lead. See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 210 F.3d 1, 8 (1st Cir. 2000).

of fiduciary duty, and violation of one of the consumer protection statutes identified in the complaint, Mass. Gen. Laws Ann. ch. 93A. As to these claims, the court concluded that the evidence was sufficient to warrant a trial and that the claims were brought within the applicable limitations period. In reaching the latter conclusion, the court determined that the claims, while sounding in tort, were essentially contractual in nature. See Hendrickson v. Sears, 310 N.E.2d 131, 132 (Mass. 1974) (observing that the "gist of the action or the essential nature of the plaintiff's claim" rather than "the form of proceeding" determines the applicable statute of limitations) (internal quotation marks omitted). Therefore, the court decided, the claims were governed by the six-year statute of limitations generally applicable to actions for contractual damages, Mass. Gen. Laws Ann. ch. 260, §2 (1992), and not the three-year statute generally used in tort actions and contract actions for personal injuries, Mass. Gen. Laws Ann. ch. 260, § 2A (1992), or the four-year statute usually applied to actions under ch. 93A, Mass. Gen. Laws Ann. ch. 260, § 5A (1992). Because the claims were brought four and one-half years after Anastasia delivered the policy to Loguidice, they were timely under the court's reasoning.

In March 2002, MetLife filed a second motion for summary judgment on Loguidice's remaining claims, which the district court treated as having been filed on behalf of Anastasia as well. The

motion contended that two decisions handed down by the Appeals Division of the Massachusetts District Court after the initial summary judgment decision required the court to revisit its earlier statute of limitations ruling. The cases in question had held that the two-year limitations period in Mass. Gen. Laws Ann. ch. 175, § 181 (1998) (permitting, inter alia, persons induced to purchase insurance policies based on misrepresentations concerning their terms to sue and recover premiums), applies to all claims mirroring the cause of action set forth in the statute, even if those claims are brought under the common law or Mass. Gen. Laws Ann. ch. 93A. See Grande v. PFL Life Ins. Co., No. 9663, 2000 WL 1376676 at *2 (Mass. App. Div. Sep. 27, 2000) (applying the Hendrickson rule and emphasizing that the "gravamen of [the] complaint" and not the form in which it designates its claims controls for statute of limitations purposes) (internal quotation marks and citation omitted); see also Slingsby v. Metropolitan Ins. Co., No. 9708, 2001 WL 389347, at *2 (Mass. App. Div. Apr. 4, 2001)(following Grande).

The district court did not accept MetLife's contention that these cases obliged it to reconsider its prior ruling because neither decision issued from a court capable of establishing controlling Massachusetts law. Nonetheless, concluding that "plaintiff's remaining claims are plainly founded upon allegations of misrepresentations made in the sale of products governed by

[Mass. Gen. Laws Ann. ch. 175, § 181]," the court granted MetLife and Anastasia summary judgment on those claims, which were filed well more than two years after Loquidice received her policy. Loquidice v. Metropolitan Life Ins., Civ. No. 97-10060-FHF, slip op. at 5 (D. Mass. Oct. 11, 2002) (memorandum and order) ("Loquidice II"). In so ruling, the court did not respond to Loquidice's alternative argument, made in opposition to both of MetLife's summary judgment motions, that its claims were saved by Massachusetts' "discovery rule" even if the two-, three-, and/or four-year limitations periods in, respectively, Mass. Gen. Laws Ann. ch. 175, § 181, Mass. Gen. Laws. ch. 260, § 2A, and/or Mass. Gen. Laws Ann. ch. 260, § 5A, were deemed applicable. Loquidice appeals from the judgment in favor of MetLife and Anastasia on her fraud and deceit, breach of fiduciary duty, and Mass. Gen. Laws Ann. ch. 93A claims.

II.

Loquidice leads with an argument that the district court did violence to the purpose of Mass. Gen. Laws Ann. ch. 175, § 181 by applying its two-year limitations period to her claims for fraud and deceit, breach of fiduciary duty, and violations of Mass. Gen. Laws Ann. ch. 93A. Loquidice constructs her argument logically: her claims are for the unlawful victimization of a consumer; but for § 181, these claims would be subjected to longer limitations periods; § 181 is part of a consumer protection statute; therefore,

it would undermine the statute's consumer-friendly design to apply its relatively short limitations period in these circumstances.

Whatever merit Loguidice's syllogism might possess, it neglects to account for the fact that, irrespective of Mass. Gen. Laws Ann. ch. 175, § 181, her fraud and deceit, breach of fiduciary duty, and Mass. Gen. Laws Ann. ch. 93A claims are time-barred (absent application of the discovery rule, which we discuss infra) unless the district court was correct when it initially found the gist of these claims to be contractual and thus governed by the six-year limitations period specified in Mass. Gen. Laws Ann. ch. 260, § 2. The reason is that Loguidice did not bring these claims until four and one-half years after receiving her insurance contract. The claims are thus presumptively untimely under not only § 181, but also under Mass. Gen. Laws Ann. ch. 260, § 2A and Mass. Gen. Laws Ann. ch. 260, § 5A.

We regard as telling Loguidice's failure to defend the district court's initial statute of limitations ruling, even in the face of MetLife's argument that we should affirm regardless whether we deem Mass. Gen. Laws Ann. ch. 175, § 181 applicable (or even reach the issue). See, e.g., Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999) (appeals court may affirm entry of summary judgment on "any ground revealed by the record"). As we understand it, the court's initial decision to apply the six-year statute of limitations to the fraud and deceit,

breach of fiduciary duty, and Mass. Gen. Laws Ann. ch. 93A claims was driven by its understanding that aspects of these claims arose out of the defendants' failure to do as they promised in the alleged agreement reached with Loguidice to provide her with a retirement plan. See Loguidice v. Metropolitan Life Ins., Civ. No. 97-10060-FHF, slip op. at 7-8 (D. Mass. March 16, 1999) (memorandum and order) ("Loguidice I") (citing Barber v. Fox, 632 N.E.2d 1246, 1249 (Mass. App. Ct. 1994) (applying six-year statute of limitations to fraud and breach of fiduciary duty claims arising out a defendant's alleged failure to perform under an agreement to convey land)). In other words, the court elected to apply a contract-based limitations period to the claims because plaintiff had made allegations challenging defendants' conduct after Loguidice purchased a MetLife plan.

The problem with this reasoning is that, of the three claims that survived the district court's initial summary judgment ruling (the correctness of which Loguidice does not dispute), only the breach of fiduciary duty claim can be read to condemn post-purchase conduct. See Compl. ¶¶ 55(b) and 56(b) (alleging, inter alia, that defendants breached their fiduciary duty to Loguidice by failing to use the money Loguidice gave them for the purposes for which it was entrusted -- to fund a retirement plan). Moreover, by the time discovery was completed and the parties had filed their summary judgment papers, Loguidice had abandoned the post-purchase-

-11-

conduct component of this claim, arguing only that Anastasia (and, by extension, MetLife) had breached a fiduciary duty to her "during" and "at the time of the sale" of the insurance policy. Loguidice Mem. Opp'n Summ. J. at 46, 49. The alleged breaches of legal duties here, having been committed by the defendants prior to the formation of any agreement, are essentially tortious (thus, Loguidice's fraud-in-the-inducement claim); they are not properly regarded as contractual in "gist." Hendrickson, 310 N.E.2d at 132. Accordingly, regardless whether the two-year limitations period in Mass. Gen. Laws Ann. ch. 175, § 181 or the three- or four-year limitations periods in, respectively, Mass. Gen. Laws Ann. ch. 260, §§ 2A and 5A are deemed applicable (a matter of state law that we need not and do not decide), Loguidice's claims are untimely unless saved by the Massachusetts discovery rule.

The Massachusetts discovery rule applies to tort actions and actions under Mass. Gen. Laws Ann. 93A. See Szymanski v. Boston Mutual Life Ins. Co., 778 N.E.2d 16, 20 (Mass. App. Ct. 2002). The rule

> operates to toll a limitations period until a prospective plaintiff learns or should have learned that he has been injured, [and] may arise in three circumstances: where a misrepresentation concerns a fact that was "inherently unknowable" to the injured party, where a wrongdoer breached some duty of disclosure, or where a wrongdoer concealed the existence of a cause of action through some affirmative act done with the intent to deceive.

Patsos v. First Albany Corp., 741 N.E.2d 841, 846 (Mass. 2001) (citation omitted). Loguidice invokes the first and second of

-12-

these circumstances, contending that (1) the wrong visited upon her was inherently unknowable (because of the complexity of the product involved) until she read about MetLife's "scam" in the newspaper, and (2) defendants, whom Loguidice contends were her fiduciaries, failed to discharge their obligations to disclose facts that would have put her on notice of her claims. In pressing the latter argument, Loguidice invokes a principle of Massachusetts law that treats a fiduciary's failure to disclose facts giving notice of a claim as a fraudulent concealment sufficient to toll the running of the relevant limitations period under Mass. Gen. Laws Ann. ch. 260, § 12 (1997) (tolling limitations periods where a "person liable to a personal action conceals the cause of such action from the knowledge of the person entitled to bring it"). Neither assertion persuades us.

Loguidice's argument that the wrongs she suffered were inherently unknowable until she read the newspaper article about the class-action settlement is undercut by our unwillingness to hand down expansive interpretations of state law at the request of diversity plaintiffs. See, e.g., New Life Brokerage Servs., Inc. v. Cal-Surance Assocs., Inc., ___ F.3d ___, No. 02-2348, slip op. at 8 (1st Cir. June 24, 2003). Loguidice concedes that she did not read through the folder Anastasia left with her when he delivered her "plan" until after instituting this litigation. Had she looked at the materials in the folder earlier, a reasonable fact finder

-13-

would have to conclude, she would have learned that there was nothing in the folder that could have constituted part of the retirement plan she thought that she had purchased other than the life insurance policy, which was distinctively so labeled. The Massachusetts courts require plaintiffs seeking to invoke the discovery rule to read the monthly statements sent by their securities broker, see Patsos, 741 N.E.2d at 846-47, and seemingly assume that they also must read their insurance policies, any illustrations that accompany the policies, and their annual statements, see Szymanski, 778 N.E.2d at 21-25. We therefore have no reason to expect that the Massachusetts courts would forgive Loguidice's failure to read through her folder. Because such a read-through would have put Loguidice on inquiry notice of her claims, the discovery rule does not save those claims. See Patsos, 741 N.E.2d at 846-47.

Loguidice's fraudulent concealment argument falters on procedural grounds. The argument did not surface in connection with either of her summary judgment submissions. Rather, it was raised for the first time in a motion asking the district court to reconsider its entry of judgment on her fraud and deceit, breach of fiduciary duty, and Mass. Gen. Laws Ann. ch. 93A claims. This was too late. See DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 33 (1st Cir. 2001) (issues first raised on a motion for reconsideration are forfeit); CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc., 97

F.3d 1504, 1525-27 (1st Cir. 1996) (same).[3]

### III.

If the facts alleged are true, the defendants' sales tactics were shameful.  But Loguidice failed to press any viable claims she might have had as a result of these tactics until after the relevant statute(s) of limitations had run.  Because the discovery rule does not save Loguidice's claims, we affirm the judgment that was entered for defendants.

**Affirmed.**

---

[3]In her reply brief, Loguidice appears to suggest that her substantive claim for breach of fiduciary duty was sufficient to preserve her argument in favor of tolling on the basis of fraudulent concealment. We disagree. "Overburdened trial judges cannot be expected to be mind readers.  If claims are merely insinuated rather than actually articulated in the trial court, we will ordinarily refuse to deem them preserved for appellate review." McCoy v. Massachusetts Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991).  Loguidice has failed to present us with any developed argument against application of this rule, and we do not see any basis for excusing her procedural default.