# United States Court of Appeals
## For the First Circuit

No. 14-1405

QUALITY CLEANING PRODUCTS R.C., INC.; RAFAEL CORREA,

Plaintiffs, Appellants,

v.

SCA TISSUE NORTH AMERICA, LLC,

Defendant, Appellee,

JOHN DOE; RICHARD ROE

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Howard, Chief Judge,
Lynch and Thompson, Circuit Judges.

Miguel Angel Rangel-Rosas, Jr., with whom Maymi Rivera, LLC
was on brief, for appellant.
Alejandro Jose Cepeda-Díaz, with whom Raúl M. Arias and
McConnell Valdés LLC were on brief, for appellee.

July 21, 2015

**HOWARD**, **Chief Judge**. Eleven years after Appellee SCA Tissue North America ("SCA") allegedly breached its distribution agreement with Appellant Quality Cleaning Products ("QCP"), QCP filed this breach of contract action. The district court dismissed the action as time-barred under the applicable three-year statute of limitations. Applying Puerto Rico's statute of limitations and accrual rules, as we must when sitting in diversity, we affirm.

**I.**

SCA manufactures cleaning products and paper goods such as napkins, bath and facial tissue, and liquid soap. In August 1997, QCP entered into a distribution agreement with SCA which designated QCP as a non-exclusive, authorized Puerto Rican distributor and wholesaler of SCA's "Tork" brand product line. QCP agreed that it would not distribute any of SCA's competitors' products and, in return, SCA promised to offer QCP all promotions and discounts that it extended to any other Puerto Rican distributor. QCP claims that SCA breached that agreement in 2001, when SCA agreed to sell its "Tork" products at a reduced rate to a third company, Bunzl/Melissa Sales Corp. ("Bunzl"), and when it granted Bunzl a five percent discount or profit on every sale of "Tork" products that Bunzl made to other distributors in Puerto Rico.

QCP filed this breach of contract action on December 7, 2012 -- over a decade later. In Puerto Rico, Act 75 governs

distribution agreements.  See P.R. Laws Ann. tit. 10, §§ 278 et seq.  SCA moved to dismiss the action as (among other things) time-barred under Act 75's three-year statute of limitations.  See id. § 278d.  QCP opposed SCA's statute of limitations defense on the sole basis that the "continuing violation" doctrine applied to delay the accrual of its claims.  Finding the continuing violation doctrine inapplicable, the district court granted SCA's motion to dismiss.  Based on the allegations contained in the complaint, the court concluded that QCP "knew since at least the year 2001" that SCA had engaged in conduct that QCP believed had violated the contract.  Seizing on that statement, QCP filed a motion to reconsider.  In that motion, and for the first time, QCP raised the "discovery rule," claiming that it had no knowledge of SCA's alleged breach until 2011.  The district court summarily denied that motion, and this timely appeal followed.

## II.

We review the district court's dismissal on statute of limitations grounds de novo, and affirm "only if the record, construed in the light most flattering to the pleader [the party opposing dismissal], leaves no plausible basis for believing that the claim may be timely."  Erlich v. Ouellette, Labonte, Roberge & Allen, P.A., 637 F.3d 32, 35 (1st Cir. 2011) (internal quotation marks omitted).

- 3 -

Act 75 imposes a three-year statute of limitations "from the date of the definite termination of the dealer's contract, or of the performing of the detrimental acts, as the case may be." P.R. Laws Ann. tit. 10, § 278d.  A limitations period "begins to run when the cause of action accrues -- that is, when the plaintiff can file suit and obtain relief."  Heimeshoff v. Hartford Life & Accident Ins. Co., 134 S. Ct. 604, 610 (2013) (internal quotation marks omitted).  Breach of contract actions, like those under Act 75, traditionally accrue at the time of the breach.  See 1 Calvin W. Corman, Limitation of Actions § 7.2.1, at 485-86 (1991); cf. Erlich, 637 F.3d at 35 (discussing Maine law).

Under this traditional rule, Act 75's limitations period began to run when SCA allegedly breached its agreement with QCP. QCP's amended complaint identifies SCA's breach (the Bunzl agreement) as taking place around the time that two companies merged to form Bunzl.  The complaint alleges that the merger, and thus the breach, occurred in 2001.  Because QCP did not file its complaint until 2012, the complaint facially indicates that Act 75's three-year statute of limitations has been far exceeded.

Nevertheless, QCP invokes both the continuing violation doctrine and the discovery rule in an attempt to argue that its Act 75 claim did not accrue until years later.  In order to establish when QCP's claim accrued, we thus must determine whether those doctrines apply to Act 75.

**A.    Does State or Federal Accrual Law Apply?**

A threshold question, disputed by the parties, is whether we look to Puerto Rico or federal law in making that accrual determination. Federal courts sitting in diversity apply the substantive law of the state and, pursuant to statute, Puerto Rico is treated as a state for diversity purposes. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); 28 U.S.C. § 1332(e). State law includes the applicable state statute of limitations. See Guaranty Trust Co. of N.Y. v. York, 326 U.S. 99, 110 (1945); Morel v. DaimlerChrysler AG, 565 F.3d 20, 23 (1st Cir. 2009). QCP's breach of contract action is based on Puerto Rico law and, consistent with Erie and Guaranty Trust, the parties agree that Act 75's three-year statute of limitations applies. But, pointing to cases in which we have borrowed a state's statute of limitations for purposes of federal law while noting that the date of accrual remains a federal law question, QCP urges that -- even in a diversity action -- accrual is necessarily governed by federal law.

QCP's contention is mistaken. In fact, it directly conflicts with the Supreme Court's remark in Ragan v. Merchants Transfer & Warehouse Co. that a cause of action in a diversity action "accrues and comes to an end when local law so declares." 337 U.S. 530, 533 (1949). Relying on this plain statement, several other circuits have held that it "is long since settled" that state

- 5 -

law governs "when a state-created cause of action accrues." <u>Walko Corp.</u> v. <u>Burger Chef Sys., Inc.</u>, 554 F.2d 1165, 1171 (D.C. Cir. 1977); <u>accord</u> <u>Cantor Fitzgerald Inc.</u> v. <u>Lutnick</u>, 313 F.3d 704, 709-10 (2d Cir. 2002); <u>Joyce</u> v. <u>A.C. & S., Inc.</u> 785 F.2d 1200, 1203 (4th Cir. 1986). We agree.

Moreover, this rule makes eminent sense because a federal court sitting in diversity must apply related state-law rules that form "an integral part of the several policies served by the [state's] statute of limitations." <u>Walker</u> v. <u>Armco Steel Corp.</u>, 446 U.S. 740, 751 (1980) (holding that whether filing of the complaint tolls the statute of limitations is governed by state law); <u>see also, e.g.,</u> <u>West</u> v. <u>Am. Tel. & Tel. Co.</u>, 311 U.S. 223, 239 (1940) (applying Ohio law requiring a plaintiff to make a pre-lawsuit demand before the statute of limitations begins to run). State accrual rules fit comfortably within this category. When state law commands that the statute of limitations hourglass is to be turned is no less an "integral part" of a state's statute of limitations scheme than <u>how long</u> the state allows the sand to drain.

That we frequently apply federal accrual rules in the context of § 1983 actions and other federal laws does not aid QCP. When a federal statute contains no statute of limitations, we apply "the most analogous statute of limitations in the state where the action was brought." <u>Greenwood ex rel. Estate of Greenwood</u> v.

N.H. Pub. Utils. Comm'n, 527 F.3d 8, 13 (1st Cir. 2008); see also, e.g., Randall v. Laconia, N.H., 679 F.3d 1, 4-5 (1st Cir. 2012) (applying state statute of limitations but federal accrual rules for purposes of the Residential Lead-Based Paint Hazard Reduction Act, 42 U.S.C. § 4852d). In those circumstances, federal rules determine when the claim accrues because "the cause of action is created by federal law," even if the statute of limitations is set by reference to state law. Cantor Fitzgerald, 313 F.3d at 710. But when, by contrast, "federal jurisdiction is based on diversity . . . state substantive law must govern" accrual and the statute of limitations alike. Id. Indeed, we have consistently adhered to this delineation in diversity cases, albeit without explicitly referencing this threshold distinction. See, e.g., Erlich, 637 F.3d at 35 (considering Maine's accrual rules); Loguidice v. Metro. Life Ins. Co., 336 F.3d 1, 6 (1st Cir. 2003) (applying Massachusetts' discovery rule).

To remove all doubt, we take this opportunity to clearly hold that a federal court sitting in diversity must apply the relevant state's statute of limitations, including its accrual rules. The mere fact that a diversity-based action is brought "in a federal court instead of in a State court a block away, should not lead to a substantially different result." Guaranty Trust Co., 326 U.S. at 109. Accordingly, we decline QCP's invitation to

- 7 -

graft a federal common law of accrual onto local statutes of limitation when sitting in diversity.

**B.**   **Applying Puerto Rico's Accrual Rules to QCP's Claim**

We thus look to Puerto Rico law to resolve whether the continuing violation doctrine or the discovery rule applies. We discuss each doctrine in turn.

### i.   **The Continuing Violation Doctrine**

QCP first argues that the discounts SCA granted pursuant to the Bunzl agreement -- which continued at least until 2010, and perhaps extend into the present -- constitute a continuing violation of the distribution agreement. In narrow circumstances, typically including Title VII and other discrimination claims, the continuing violation doctrine permits a plaintiff to recover for injuries occurring outside of the limitations period. See Pérez-Sánchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008). As long as a related act falls within the limitations period, the doctrine allows a lawsuit to be delayed in cases -- such as hostile work environment claims -- in which a course of "repeated conduct" is necessary before "a series of wrongful acts blossoms into an injury on which suit can be brought." Ayala v. Shinseki, 780 F.3d 52, 57 (1st Cir. 2015) (internal quotation marks omitted). The doctrine does not apply, however, to allow the late filing of a claim based on a discrete discriminatory act that occurs on a specific day, and thus does not permit a plaintiff "to avoid filing

suit so long as some person continues to violate his rights," Pérez-Sánchez, 531 F.3d at 107; see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). In that sense, the doctrine is not truly "about a continuing [violation], but about a cumulative violation." Limestone Dev. Corp. v. Village of Lemont, Ill., 520 F.3d 797, 801 (7th Cir. 2008).

We agree with the district court that the continuing violation doctrine does not apply to Act 75 claims.[1] The parties have not cited any decisions of the Supreme Court of Puerto Rico that apply the continuing violation doctrine to Act 75, nor have we independently found any case that does. Thus, it appears that "the Puerto Rico Supreme Court has not spoken directly to the precise question that confronts us." González Figueroa v. J.C. Penny P.R., Inc., 568 F.3d 313, 318 (1st Cir. 2009). Where that is the case, "our task is to ascertain the rule the state court would most likely follow under the circumstances." Blinzler v.

---

[1] SCA does not argue that QCP's complaint failed to adequately invoke the continuing violation doctrine. When the dates listed and the allegations contained in the complaint facially suggest that the limitations period had been exceeded, the plaintiff must, to avoid dismissal, "'sketch a factual predicate'" that provides a basis for avoiding the statute of limitations, concluding that the limitation period has not run, or finding that a different statute of limitations applies. Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (quoting LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509-10 (1st Cir. 1998)). We assume for the sake of argument that QCP has sketched an adequate factual predicate.

Marriot Int'l, Inc., 81 F.3d 1148, 1151 (1st Cir. 1996). We are convinced that Puerto Rico is unlikely to apply the continuing violation doctrine to Act 75 claims.

Courts have largely, if not exclusively, held that application of the continuing violation doctrine is cabined to certain civil rights or tort actions.[2] See e.g., Lutz v. Chesapeake Appalachia, LLC, 717 F.3d 459, 466 & n.5 (6th Cir. 2013) (citing cases noting that courts have been reluctant to apply the continuing violation doctrine outside of the Title VII context); Schaffhauser v. Citibank (S.D.) N.A., 340 F. App'x 128, 131 (3d Cir. 2009) ("[O]ur decisions have limited the continuing violation doctrine to the employment discrimination context."). The only Puerto Rico Supreme Court case that we have found arguably endorsing the concept of a continuing wrong tracks this delineation, and applies the concept in the employment discrimination context. See Sánchez v. Elec. Power Auth., 142 P.R. Dec. 880, 1997 P.R.-Eng. 878520, slip op. at 3-4 (1997) (García, J., concurring); id. slip op. at 8-9 (Naveira de Rodón, J., concurring). We are not aware of any case in which a court, including the Puerto Rico Supreme Court, has applied the doctrine

---

[2] QCP suggests that SCA's alleged contractual infractions sound in tort, but provides no legal or factual support for that assertion. In any event, the pleaded claim is plainly a breach of contract action under Act 75.

- 10 -

to a contract claim.  See 1 Corman, supra § 7.2.1, at 487 ("The tort concept of continuing wrong, which postpones the time of accrual of the cause of action, does not apply to actions for breach of contract.").  And this apparent resistance to applying the doctrine in contract cases makes sense.  Unlike a prolonged series of wrongful acts, a contract breach is a single, readily ascertainable, event.  Cf. 51 Am. Jur. 2d Limitation of Actions § 139, at 601 (2011) (noting that a breach "occurs when a party fails to perform when performance is due").

Given this general principle, and the dearth of any Puerto Rico authority on point, we see no basis to assume that the Puerto Rico Supreme Court would extend the continuing violation doctrine to Act 75 claims.  In fact, that conclusion is all the more likely because, when that court has considered mechanisms that might prolong Act 75's limitation period, the court has emphasized the need for expeditious resolution of commercial disputes.  In an effort to "encourage diligence and speed in commercial relations" and to "expedite mercantile traffic," the court has held that the restrictive tolling provisions of the Commerce Code, not the more generous provisions of the Civil Code, apply to Act 75.  Pacheco v. Nat'l W. Life Ins. Co., 122 P.R. Dec. 55, 22 P.R. Offic. Trans. 49, 60 (1988).  To nevertheless apply the continuing violation doctrine here -- and allow QCP to assert a claim eleven years after SCA's alleged breach -- would permit

- 11 -

QCP to more than triple Act 75's limitations period.  That result would directly conflict with Pacheco's rationale.[3]

Ultimately, we see no basis to apply the continuing violation doctrine to Act 75 and thus prolong the statute of limitations.  "A federal court sitting in diversity cannot be expected to create new doctrines expanding state law."  Gill v. Gulfstream Park Racing Ass'n, 399 F.3d 391, 402 (1st Cir. 2005).

### ii.  **The Discovery Rule**

QCP also raises the discovery rule as an alternative ground to escape the limitations bar, claiming that it had no knowledge of SCA's alleged breach until 2011.  The rule "delays accrual of a cause of action until the plaintiff has 'discovered' it."  Merck & Co., Inc. v. Reynolds, 559 U.S. 633, 645 (2010).  The Puerto Rico Civil Code's general statute of limitations explicitly includes a discovery rule.  See P.R. Laws Ann. tit. 31, § 5298 (statutory period runs "from the time the aggrieved person

---

[3] Furthermore, even if the doctrine did apply, because the alleged detrimental act here is SCA's agreement with Bunzl, we are doubtful that any later discounts granted pursuant to that agreement could even be construed as a continuing violation. See, e.g., McNamara v. City of Nashua, 629 F.3d 92, 97 (1st Cir. 2011) ("That the wrong (if any) had consequences that endure to the present does not make the violation a continuing one."); Muñiz-Rivera v. United States, 204 F. Supp. 2d 305, 315 (D.P.R. 2002) aff'd, 326 F.3d 8 (1st Cir. 2003) ("A continuing violation occurs when there is a series of continual unlawful acts, not when there are merely continual harmful effects from an original unlawful act." (emphasis in original)).

- 12 -

had knowledge" of the injury); see also Colón Prieto v. Géigel, 115 P.R. Dec. 232, 15 P.R. Offic. Trans. 313, 326-27 (1984). Act 75 contains no similar language.[4]

We need not definitively resolve whether Act 75 nevertheless incorporates a discovery rule, however, because a basic infirmity abounds. QCP did not raise the discovery rule in its initial opposition to SCA's motion to dismiss. Instead, it only sought refuge in the discovery rule in its Rule 59(e) motion for reconsideration. In that motion, QCP first claimed that it had no knowledge of SCA's breach until it inadvertently received an e-mail from a Bunzl sales representative in 2011 revealing the

---

[4] Although SCA again raises no pleading deficiency, we note that QCP's complaint is devoid of any allegations suggesting it was oblivious to SCA's purported breach until 2011. We have not had the occasion to define the contours of a plaintiff's burden to plead facts necessary to invoke the discovery rule -- an inquiry governed by federal law, even in a diversity case. See Andresen v. Diorio, 349 F.3d 8, 17 (1st Cir. 2003). While some courts, including one district court in our circuit, have concluded that a plaintiff must affirmatively plead the discovery rule, others have held that it is unnecessary for a plaintiff to specifically name the rule in order to rely upon it. Compare, e.g., Stone v. Colt Indus. Operating Corp., No. 86-1107-MA, 1986 WL 13073, at *2 (D. Mass. Oct. 31, 1986), with Colonial Penn Ins. Co. v. Market Planners Ins. Agency, Inc., 1 F.3d 374, 376 (5th Cir. 1993). But even those courts that do not require a plaintiff to explicitly reference the discovery rule by name in the complaint note that a plaintiff must plead some facts "sufficient to give notice of its reliance on the discovery rule." Colonial Penn Ins. Co., 1 F.3d at 376. Thus, at the very least, QCP likely had to plead some facts that would indicate that it was unaware of or unable to discover SCA's breach until 2011. Nevertheless, we need not decide whether QCP failed to meet its pleading burden here because we are able to resolve this issue on other grounds.

SCA/Bunzl agreement. We review the district court's dismissal of that motion only for abuse of discretion. <u>Biltcliffe</u> v. <u>CitiMortgage, Inc.</u>, 772 F.3d 925, 930 (1st Cir. 2014).

As we have held time and again, however, a Rule 59(e) motion "does not provide a vehicle for a party to undo its own procedural failures" or to "introduce new evidence or advance arguments that could and should have been presented to the district court prior to judgment." <u>Emmanuel</u> v. <u>Int'l Bhd. of Teamsters, Local Union No. 25</u>, 426 F.3d 416, 422 (1st Cir. 2005) (internal quotation marks omitted); <u>Aybar</u> v. <u>Crispin-Reyes</u>, 118 F.3d 10, 16 (1st Cir. 1997) (holding that plaintiffs could not rely on a new argument in a motion for reconsideration to toll the statute of limitations). Accordingly, because QCP did not raise the discovery rule until its motion for reconsideration, "the district court scarcely can be said to have abused its discretion in refusing to reconsider its decision based on the plaintiff's newly raised argument." <u>Cochran</u> v. <u>Quest Software, Inc.</u>, 328 F.3d 1, 11 (1st Cir. 2003).[5]

---

[5] QCP's complaint also alleged that its president, Rafael Correa, suffered mental and emotional distress as a result of SCA's breach. In its opening brief, QCP made no argument that the district court erred in dismissing that tort claim; as a result, the argument is waived. <u>See</u> <u>Sandstrom</u> v. <u>ChemLawn Corp.</u>, 904 F.2d 83, 86 (1st Cir. 1990). In any event, QCP conceded in its reply brief that if the district court properly dismissed its Act 75 claim, the dismissal of the tort claim necessarily followed. Thus, we similarly affirm the dismissal of the emotional distress count.

## III.

For the foregoing reasons, the district court's order dismissing QCP's complaint is **<u>affirmed</u>**.