# United States Court of Appeals
## For the First Circuit

---

No. 02-1011

CENTER FOR BLOOD RESEARCH, INC.,
Plaintiff, Appellant,

v.

COREGIS INSURANCE COMPANY,
Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

---

Before

Torruella and Howard, Circuit Judges, and
Greenberg,* Senior Circuit Judge.

---

Harvey Nosowits with whom Daryl J. Lapp and Palmer & Dodge were on brief for appellant.
Perry M. Shorris with whom Jeffrey A. Goldwater, Scott Douglas Burke and Bollinger, Ruberry & Garvey were on brief for appellee.

---

September 30, 2002

---

*Of the Third Circuit, sitting by designation.

**GREENBERG, <u>Senior Circuit Judge</u>**.

I.  BACKGROUND

This matter comes on before this court on an appeal by the Center for Blood Research, Inc. ("Center") from an order for summary judgment entered in the district court on November 27, 2001, in favor of Coregis Insurance Company, and from an order denying the Center's motion for reconsideration entered February 1, 2002.  The Center brought this action against Coregis in the Superior Court of Massachusetts, Suffolk Division, on breach of contract, breach of the implied covenant of good faith and fair dealing, and statutory unfair and deceptive practices[1] theories against Coregis because of its refusal to reimburse the Center for attorney's fees it incurred in responding to an investigative subpoena issued and served on the Center by the United States Attorney for the District of Massachusetts.  The Center asserted that Coregis was liable for these fees pursuant to a nonmonetary claims endorsement in a Nonprofit Organization Liability Insurance policy that Coregis issued to the Center.  Coregis removed the case to the district court pursuant to 28 U.S.C. § 1441 on the basis of the parties' diversity of citizenship under 28 U.S.C. § 1332.

After the removal, the parties moved for summary judgment.  The district court denied the Center's motion but granted Coregis's by its memorandum and order of November 27, 2001, and, in a separate order entered on the same day, dismissed the

------

[1]<u>See</u> Mass. Gen. Laws ch. 93A (West 1997).

action and closed the case. The Center then filed a motion for reconsideration and a notice of appeal from the November 27, 2001 order for summary judgment. The district court by order entered on February 2, 2002, denied the motion for reconsideration following which the Center amended its notice of appeal to include an appeal from that order as well.[2]

The historical facts are undisputed. Coregis issued the policy for a one-year period from December 1, 1997, through December 1, 1998. The policy required Coregis to pay on behalf of its insureds, subject to the policy limits and a retention provision, all losses attributable to a claim for a "wrongful act." The policy indicated that "CLAIM means any demand made upon the INSURED for monetary damages, whether formal or informal, written or oral, as a result of a WRONGFUL ACT." The policy included an endorsement entitled "Coverage for Nonmonetary Claims" which provided that Coregis "shall have the right and duty to defend, including the selection of counsel, any Claim against the INSURED(S) alleging, based upon or arising out of claims, demands or actions solely for relief or redress in any form other than monetary damages." The endorsement further provided that the definition of "CLAIM," quoted above from the basic policy, "is amended to include any judicial or administrative proceeding in

---

[2]It appears that the motion for reconsideration was untimely and that the district court properly denied it on that ground. The Center does not mention this point in its brief but instead focuses on the merits of the case. In any event, the motion for reconsideration was unmeritorious and added nothing to its case.

which any INSURED(S) may be subjected to a binding adjudication of liability for damages or other relief."

On or about October 14, 1998, within the period for coverage under the policy, the United States Attorney for the District of Massachusetts served a subpoena duces tecum on the Center directing its "Keeper of Records" to appear before a specific assistant United States attorney at the United States Courthouse in Boston and to produce certain records that the subpoena recited were "necessary in the performance of the responsibility of the U.S. Department of Justice to investigate Federal Health care offenses." The authority for this subpoena was section 248 of the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 18 U.S.C. § 3486, which authorizes records to be subpoenaed that may be "relevant to the investigation" of "a Federal health care offense."[3]

The Center complied with the subpoena and cooperated with the United States Attorney in the investigation. The investigation did not culminate in civil or criminal charges being brought against the Center, though one of its former employees, in a criminal prosecution apparently instituted on the basis of information developed in the investigation, pleaded guilty to taking kickbacks in what the Center recites was "conduct outside

_____

[3] Congress has amended section 248, 18 U.S.C. § 3486, since October 14, 1998, see Pub. L. No. 105-218, 112 Stat. 2681-72; Pub. L. No. 105-314, 112 Stat. 2984; Pub. L. No. 106-544, 114 Stat. 2716, but we are using the version in effect on October 14, 1998, in this opinion. We are satisfied that our result would not be different under the amended versions of the section.

the scope of his employment." The Center, however, does not seek coverage on behalf of that employee, and we are not concerned further with that prosecution.

The Center gave Coregis timely notice of the service of the subpoena and sought a defense, essentially the provision of attorneys or payment of attorney's fees, in the investigation. After some initial discussions and activities that we need not describe, Coregis denied coverage. The Center nevertheless engaged counsel to represent it in response to the subpoena to protect its interests and those of its employees in the investigation, incurring $77,091.70 in expenses. Thus, it brought this action against Coregis seeking recovery of these expenses, less the amount of the policy retention, as well as statutory damages and attorney's fees. The district court found that the Center's claim did not come within the policy, and accordingly, it found in favor of Coregis. This appeal followed.[4]

## II. DISCUSSION

The district court in its memorandum set forth the applicable legal principles, indicating that the Appeals Court of Massachusetts recently restated succinctly the following guidelines for interpreting insurance contracts:

> The interpretation of an insurance
> policy is a 'question of law for the trial

---

[4]We have jurisdiction under 28 U.S.C. § 1291, and we are exercising plenary review on this appeal. See Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000).

> judge, and then for the reviewing court.'
> Cody v. Connecticut Gen. Life Ins. Co., 387
> Mass. 142, 146, 439 N.E.2d 234 (1982).
> Unambiguous words in an insurance policy
> exclusion must be interpreted in their usual
> and ordinary sense. Bagley v. Monticello Ins.
> Co., 430 Mass. 454, 457, 720 N.E.2d 813
> (1999). A term is ambiguous only if it is
> susceptible of more than one meaning and
> reasonably intelligent persons differ as to
> which meaning is the proper one. Lumbermens
> Mut. Cas. Co. v. Offices Unlimited, Inc., 419
> Mass. 462, 466, 645 N.E.2d 1165 (1995). An
> ambiguity is not created simply because a
> controversy exists between the parties. Ibid.
> 'Nor does the mere existence of multiple
> dictionary definitions of a word, without
> more, suffice to create an ambiguity, for most
> words have multiple definitions.' Citation
> Ins. Co. v. Gomez, 426 Mass. 379, 381 688
> N.E.2d 951 (1988).

County of Barnstable v. Am. Fin. Corp., 744 N.E.2d 1107, 1109

(Mass. App. Ct. 2001). The district court also recognized "that

when policy language is ambiguous, a court should adopt an

interpretation of the ambiguous term favorable to the insured and

in that analysis may consider what an objectively reasonable

insured, reading the relevant policy language, would expect to be

covered," Center for Blood Research, Inc. v. Coregis Ins. Co., No.

01-10708-GAO, slip op. at 8 (D. Mass. Nov. 14, 2001) (quoting Hazen

Paper Co. v. United States Fid. & Guar. Co., 555 N.E.2d 576, 583

(Mass. 1990) (omitting internal quotation marks)). We approach

this case applying the same principles.

Initially, of course, we consider the nature of the claim

for which the Center is seeking coverage. There was no suggestion

in the subpoena that the government was seeking anything other than

information from the Center. Moreover, 18 U.S.C. § 3486 provides

-6-

that "the Attorney General or the Attorney General's designee may issue in writing and cause to be served a subpoena" in "any investigation relating to any act or activity involving a Federal health care offense" for "the production of any records . . . which may be relevant to an authorized law enforcement inquiry, that a person or legal entity may possess or have care, custody or control."  Thus, there is no suggestion in the statute that the subpoenaed entity need be a target of the investigation, and in fact, the Center acknowledges that the investigation did not result in the government bringing any charges against it.  Consequently, there can be no doubt that we must treat the Center as nothing more than a custodian of records.[5]  The question, then, is whether the Center, when served with a subpoena in its capacity as custodian of records in an investigation to produce records, reasonably could have expected to be covered under Coregis's policy for its expenses in connection with producing the records and the ancillary matters raised by the investigation.

We do not understand how the Center or any reasonable insured in its position could have had any such expectation.  We reiterate that the endorsement for nonmonetary claims imposed on Coregis a duty to defend against "any Claim against the INSURED(S)

_____

[5]We do not imply that our result would be different if the Center claimed to have been a target of the investigation or even if the investigation led to the government bringing civil or criminal proceedings against it.  The Center does not claim to have been a target, the government did not bring such charges, and we simply are ruling on the basis of the circumstances presented.

alleging, based upon or arising out of claims, demands or actions solely for relief or redress in any form other than monetary damages" and that for purposes of the endorsement "Claim" includes "any judicial or administrative proceeding in which any INSURED(S) may be subjected to a binding adjudication of liability for damages or other relief." Certainly, the Center could not possibly have been subject to a binding adjudication of liability in the investigation before the assistant United States attorney in response to the subpoena as that officer could not make an adjudication of liability for any relief and indeed could not adjudicate anything at all. Rather, he merely could gather information and investigate. We think that an objectively reasonable insured would have recognized the limitations of the investigation and of the scope of coverage under the insurance policy and the nonmonetary claims endorsement, and thus understood that its expenses for attorneys to represent it in response to the subpoena and in the investigation would not be covered.

We realize that the United States Attorney might have developed information leading to the institution of civil or criminal proceedings as a result of the investigation, and indeed, this apparently happened. We also recognize that the Center itself might have been a defendant in such proceedings, though this did not happen. Nevertheless, there could not have been a binding adjudication of liability for damages or any other relief against the Center in the investigation before the assistant United States attorney as the civil or criminal proceedings would have had to

have been pursued in a different forum. While the Center argues that the compelled disclosure of information in itself is relief, see, e.g., Wolfe v. Mass. Port Auth., 319 N.E.2d 423 (Mass. 1974), the nonmonetary claims endorsement cannot provide coverage for expenses incurred in the mere participation in the investigation before the Attorney General or his designee inasmuch as the endorsement provides that the potential relief for coverage to be provided must be the product of a binding adjudication in a proceeding. As we have indicated, there could not have been a binding adjudication in the investigation. Inasmuch as any other reading of the endorsement would distort its plain meaning mere compliance with the subpoena simply is not relief. In sum, we are satisfied that the endorsement is not ambiguous, and we will not rewrite it to create coverage where it does not exist.

We have not overlooked the provision in the subpoena warning the putative witness that "[f]ailure to comply with the requirements of this subpoena will render you liable to proceedings in the district court of the United States to enforce obedience to the requirements of this subpoena, and to punish default or disobedience." This provision reflects the statutory authority granted the Attorney General to invoke the aid of a United States Court "to compel compliance with the subpoena." 18 U.S.C. § 3486(c). But the enforcement proceeding contemplated by 18 U.S.C. § 3486(c) is not a portion of the investigation before the Attorney General or his designee. Rather, section 3486(c) makes clear that the enforcement proceeding must be instituted separately from the

investigation and is held before a judge rather than an assistant United States attorney.  In the circumstances, it is clear that if the United States Attorney initiated an enforcement proceeding it would be discrete from the investigation, though it would be in aid of it.  It well may be that if there had been such an enforcement proceeding the nonmonetary claims endorsement would have provided coverage for the Center's expenses in it, but we need not determine that issue as the government did not institute any such proceeding.

**Affirmed**.