# United States Court of Appeals
## For the First Circuit

No. 03-1382

RITA M. FOISY,

Plaintiff, Appellee,

v.

ROYAL MACCABEES LIFE INSURANCE COMPANY AND
REASSURE AMERICA LIFE INSURANCE COMPANY,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Kenneth P. Neiman, U.S. Magistrate Judge]

Before

Lipez, Circuit Judge,
Coffin, Senior Circuit Judge,
and Barbadoro,[*] District Judge.

Francis M. Lynch with whom Philip M. Howe and Lecomte,
Emanuelson & Doyle were on brief for appellants.
Raipher D. Pellegrino with whom Hope C. Button and Raipher D.
Pellegrino Associates were on brief for appellee.

January 22, 2004

[*]Of the District of New Hampshire, sitting by designation.

**COFFIN, Senior Circuit Judge**. This case arises from a dispute between appellant Royal Maccabees Life Insurance Company and appellee Rita Foisy, who purchased an annuity policy from Maccabees. Foisy received sixty months of annuity payments, but claims that under the terms of the policy, she was entitled to lifetime payments. Maccabees disagrees, contending that the policy she purchased provides only the sixty months of benefits and nothing further. Foisy filed suit in Massachusetts state court, and Maccabees removed to federal court on the basis of diversity.[1] A jury trial resulted in a verdict for Foisy on claims of breach of contract and negligent misrepresentation. On appeal, Maccabees challenges the timeliness of Foisy's action and the evidentiary basis for the jury verdict. We affirm the district court on all counts.

## I. Background

In 1994, seventy-six year old Rita Foisy consulted her son-in-law, Gerald Healy, about how she might use $40,000 received from her late husband's life insurance to secure an income stream for herself. Healy, an independent licensed insurance broker and credentialed financial consultant, agreed to research annuity

---

[1]In accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties consented to a magistrate judge's conduct of all proceedings in the case, including jury trial and entry of the final judgment, with direct review by this court.

products on her behalf. Healy contacted Bader Insurance Agency,[2] with whom he had an established business relationship,[3] for information on annuity policies. Bader, in turn, contacted Maccabees.

In response to Bader's inquiry, Maccabees provided three "illustrations" of annuity policies for Foisy, each detailing a different scenario available for a $40,000 premium. Bader passed the illustrations on to Healy, who then met with Foisy to explain the various policy options. Foisy elected what both she and Healy believed to be an annuity that provided lifetime monthly payments of $710.99, including a guaranteed minimum of 60 payments totaling $42,659.40. Healy and Foisy understood that should Foisy die before the minimum 60 payments, her beneficiary received the remainder of the guaranteed sum; if Foisy died after the 60 minimum payments, the annuity would simply cease with her death and there would be no payment to the beneficiary. Healy filled out the portion of the annuity application reserved for writing agents (and in the process applied for an agent's license from Maccabees), Foisy signed the application, and the monthly payments began in May 1994.

---

[2]Bader Insurance Agency held general agency contracts with a number of insurers, and in turn sought writing agents to sell the products of those insurers to consumers.

[3]Bader and Healy routinely did business together; Healy frequently approached Bader with requests for product information on behalf of his - Healy's - clients.

Foisy received exactly the benefits she expected until, in the fall of 1999, she began bouncing checks and discovered that the annuity payments that had been deposited directly into her checking account had stopped in May. When Healy contacted Maccabees on her behalf,[4] the company maintained that Foisy's policy provided only 60 monthly payments, nothing thereafter, and that the provisions of the contract had thus been fulfilled.[5]

Healy's efforts to persuade Maccabees that the policy provided lifetime benefits failed, and Foisy subsequently filed suit. She received a jury verdict in her favor on counts of breach of contract and negligent misrepresentation, and was awarded damages of $29,150.20 and $20,000, respectively. Although Maccabees pled the statute of limitations as a defense, at the close of evidence the district court determined as a matter of law that Foisy's

---

[4]Maccabees was acquired by another company in 1999; the administration of all contracts issued outside of New York was transferred to a third party in Texas, initially called Cybertech and subsequently Reassure America. We will refer only to Maccabees, rather than any of the successor entities.

[5]In insurance industry parlance, Foisy believed she had purchased a "certain and continuous" annuity while Maccabees maintained the policy was a "certain only" annuity. A certain and continuous annuity provides a minimum number of guaranteed payments, regardless of whether the annuitant dies before the minimum payments are complete. If the annuitant outlives the guaranteed minimum, payments will continue for life, ending upon the death of the annuitant. A certain only annuity yields a specified number of payments and nothing beyond. A third option, only tangentially relevant here, is the lifetime annuity, in which the annuitant receives payments for life, with no guaranteed minimum.

claims were timely, and thus the jury did not consider any limitations issues. The district court denied Maccabees' post-trial motions for judgment as a matter of law or in the alternative a new trial.

Maccabees appeals the district court's judgment on multiple grounds. First, the company objects to the court's decision on the statute of limitations, arguing that it is entitled to judgment as a matter of law because the claims were barred or, at a minimum, the jury should have decided the limitations question. Second, with respect to the contract claim, Maccabees contests the district court's decision to allow the jury to interpret disputed language in the policy. According to Maccabees, the contract was unambiguous and should have been interpreted in its favor by the judge. The company further claims that, in any event, the evidence was insufficient to support a finding of breach. Third, Maccabees attacks the evidentiary basis for the negligent misrepresentation verdict, claiming that there is no support for the jury's finding that Healy was Maccabees' agent and that Foisy reasonably relied on Healy's statements.

Maccabees bears a heavy burden in seeking relief from the judgment below. In reviewing a denial of judgment as a matter of law, we examine the evidence in favor of Foisy, the non-moving party. Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 14 (1st Cir. 2002). Although our review of the court's decision is

plenary, our scrutiny of the jury verdict is tightly circumscribed; we will reverse only "if a reasonable person could not have reached the conclusion of the jury." White v. New Hampshire Dep't of Corrections, 221 F.3d 254, 259 (1st Cir. 2000).

We review denial of a motion for new trial for abuse of discretion, a similarly stringent standard which recognizes that a district court should grant such a motion "only if the verdict is against the demonstrable weight of the credible evidence or results in a blatant miscarriage of justice." Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 717 (1st Cir. 1994).

## II.  Statute of Limitations

Maccabees asserts that the statute of limitations began to run on both claims when Foisy purchased the policy in April 1994. According to the company, the six-year limitations period for contract claims and three-year limitations period for negligent misrepresentation claims had passed by the time Foisy filed suit in March 2001.

Under Massachusetts law, which applies in this diversity case, contract claims generally accrue at breach. Saenger Org. v. Nationwide Ins. Licensing Assocs., 119 F.3d 55, 64 (1st Cir. 1997). Similarly, tort claims accrue at the time of injury. Tagliente v. Himmer, 949 F.2d 1, 4 (1st Cir. 1991). Under the Massachusetts discovery rule, however, a claim will not accrue until the plaintiff "knows of the cause of action or . . . should have known

-6-

of the cause of action." Riley v. Presnell, 409 Mass. 239, 244, 565 N.E.2d 780, 785 (1991).

We are unpersuaded by Maccabees' argument that our decision in Loquidice v. Metro. Life Ins. Co., 336 F.3d 1 (1st Cir. 2003), requires us to find that Foisy had knowledge of her claims as far back as 1994. In Loquidice, despite a sympathetic factual background in which an unsavory insurance agent misled the plaintiff into believing she purchased a retirement plan when in fact she purchased life insurance, we held that the claims were barred because the language of the policy clearly indicated it was life insurance, thus putting the plaintiff on inquiry notice of her claim. See id. at 7. Here, however, because the language in Maccabees' policy is ambiguous, see infra at 12, Foisy could not be expected to have had knowledge of a particular construction of the policy.

For the same reason, Maccabees' reliance on Quigley v. Unum Life Ins. Co., 688 F. Supp. 80 (D. Mass. 1988), is misplaced. The Quigley plaintiffs' contract and negligent misrepresentation claims were barred because the contract's coverage was ascertainable had the plaintiffs performed annuity calculations. Maccabees suggests that, a fortiori, the relative simplicity of the six-page Maccabees policy requires a finding that Foisy should have known that she purchased a policy different from what she intended. Maccabees, however, confuses brevity with clarity. It is the policy's

ambiguity - unmitigated by the relatively short length - that made Foisy's claim unknowable until 1999.

Even absent a favorable ruling on its motion for judgment as a matter of law, Maccabees contends that, at the very least, the question of accrual was for the jury to decide. See Taygeta Corp. v. Varian Assoc., 436 Mass. 217, 229, 763 N.E.2d 1053, 1063 (2002) ("In most instances, the question when a plaintiff knew or should have known of its cause of action is one of fact that will be decided by the trier of fact."). Having been deprived of jury consideration on a material issue, Maccabees argues it is entitled to a new trial. Acknowledging that the court's decision to rule on the issue as a matter of law was a close call, we nevertheless affirm. In light of the jury's verdict, that decision was at worst harmless error.

Since the jury found that the contract was a life annuity - a verdict which we uphold, see infra at 14 - there could be no breach, and therefore no accrual of the contract claim, until after May 1999, when Maccabees stopped making monthly payments. The contract action, filed two years later, was thus timely. Although the negligent misrepresentation claim deserves slightly more attention, in the end Foisy prevails here as well.

Under the Massachusetts discovery rule, the limitations period on a tort claim will not commence until a plaintiff is able to recognize some causal connection between the defendant's actions

and her injury.  See, e.g., Szymanski v. Boston Mut. Life Ins. Co., 56 Mass. App. Ct. 367, 370-71, 778 N.E.2d 16, 20 (2002).  In other words, Foisy's claim for negligent misrepresentation could not have accrued if the factual basis for it was "inherently unknowable." Collins v. Nuzzo, 244 F.3d 246, 253 (1st Cir. 2001).

We assume for purposes of analyzing this issue that the contract did not provide a lifetime annuity, and that Healy's statements to that effect thus were false.[6]  Foisy argues that she could not have known that her understanding was incorrect because the contract's ambiguous language reasonably supported her interpretation.  We agree.

The district court's threshold finding that the policy was ambiguous means that she could not be held to knowledge of her claim until 1999, when the payments stopped.  We agree with the district court that no other circumstances existed to put her on notice that the company's interpretation differed substantially from her own.[7]

---

[6]The jury's verdict in favor of Foisy on both claims rests on the contradictory factual predicate that the contract was - for purposes of the contract claim - a certain and continuous policy, but that - for purposes of the negligent misrepresentation claim - it was a certain only policy.  We see no grounds, however, for disturbing the verdict on the basis of that inconsistency. See infra at 14 n.8.

[7]Contrary to Maccabees' contention at oral argument, the ambiguity itself did not put Foisy on notice.  As discussed infra, the ambiguity here yielded two different, plausible interpretations.  If that were sufficient to put a plaintiff on notice, an insurer could too easily wield ambiguity to avoid

We affirm the district court's denial of Maccabees' motion for judgment as a matter of law based on the statute of limitations, as well as the motion for new trial.

### III.  **Contract Claim**

Maccabees contends that interpretation of the annuity policy was a question of law for the trial judge and, furthermore, that the evidence fails to support the jury verdict.

Maccabees correctly notes that construction of an insurance contract is generally a question of law.  See Ruggerio Ambulance Serv. v. Nat'l Grange Mut. Ins. Co., 430 Mass. 794, 797, 724 N.E.2d 295, 298 (2000).  Acknowledging in passing that disputed facts bearing on interpretation may be submitted to the jury, see Vergato v. Commercial Union Ins. Co., 50 Mass. App. Ct. 824, 826, 741 N.E.2d 486, 488 (2001), Maccabees continues to rely on its assertion that the contract unambiguously provides a "certain only" annuity, and should have been interpreted as such by the court as a matter of law.  Foisy's contradictory reading of the contract is of no consequence under Maccabees' argument because a mere controversy over interpretation is not, by itself, enough to create ambiguity.  See Center for Blood Research v. Coregis Ins. Co., 305

---

litigating the merits under the much less favorable rule that ambiguities are construed in favor of the insured.  See Utica Mut. Ins. Co. v. Weathermark Investments, Inc., 292 F.3d 77, 80 (1st Cir. 2002); Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146, 439 N.E.2d 234, 237 (1982).  We do not decide under what circumstances a patent or flagrant ambiguity would put a plaintiff on notice.

F.3d 38, 41 (1st Cir. 2002)(citing <u>County of Barnstable</u> v. <u>Am. Fin. Corp.</u>, 51 Mass. App. Ct. 213, 215, 744 N.E.2d 1107, 1109 (2001)).

The rule of interpretation, however, has more nuance than Maccabees suggests. If, upon "application of pertinent rules of construction," the district court makes a threshold determination of ambiguity, and thus also finds that extrinsic evidence is necessary to resolve the dispute, then a question of fact arises to be resolved by the jury. 2 <u>Couch on Insurance</u> § 21:13 (3d ed. 1999); <u>see</u> <u>also</u> <u>Utica Mut. Ins. Co.</u> v. <u>Weathermark Investments, Inc.</u>, 292 F.3d 77, 80 (1st Cir. 2002)("Only where a contractual term is ambiguous does its interpretation pose a question of fact . . . [and] the parties may adduce extrinsic evidence of their respective intendments."). A court may make such a threshold finding of ambiguity if the contractual language is "susceptible of more than one meaning and reasonably intelligent persons [could] differ as to which meaning is the proper one." <u>Center for Blood Research</u>, 305 F.3d at 41.

Contrary to Maccabees' allegations, the district court undertook an appropriate preliminary analysis of the contract prior to sending it to the jury. Upon Maccabees' motion for summary judgment based on expiration of the limitations period, the court carefully considered the substance of the policy. Construing disputed provisions in the contract, the judge determined that both

-11-

Maccabees and Foisy offered reasonable interpretations. As Maccabees stressed, the annuity benefits schedule listed total annuity benefits of $42,659.40 and annuity payments certain lasting 60 months. Conversely, Foisy highlighted language in the contract specifying that "[e]xcept as stated under Death of Owner, the Annuity Payments will end with the death of the owner." Significantly, the court observed that the "Death of Owner" provision did not address the situation at hand, in which the annuitant outlived the payments certain. The controversy between Foisy and Maccabees arose from a genuine ambiguity in the contract, and the district court properly determined that the intent of the parties was therefore a question of fact suitable for trial. See Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779, 761 N.E.2d 946, 951 (2002).

Maccabees also seeks to overturn the jury verdict, contending that the evidence at trial supported only the conclusion that the policy provided 60 months of payments and nothing further. Each party, however, presented expert testimony supporting a different interpretation of the policy. John Stiefel, Foisy's expert, offered his opinion that, based on a review of the document, Foisy purchased a continuous and certain annuity providing lifetime benefits. Stiefel supported his opinion with cogent and pertinent observations about the document, including use of the phrase "life annuity" in the title and the lack of any reference to an end date

-12-

for payments. He also suggested that retired individuals like Foisy usually elect lifetime, rather than certain only, annuities because the primary motivation for purchase of the policy is to ensure that the retiree does not outlive his or her income. Buttressing the expert's opinion, Foisy and Healy each testified that they intended to apply for a policy providing a lifetime annuity. In short, there was substantial evidence on which the jury could have based its verdict.

None of Maccabees' contradictory evidence compelled the jurors to reject Foisy's position. Other than an annuity expert to rebut Foisy's expert, the only witness presented by Maccabees was a former marketing employee, Nancy Pietrowski, who, although well-versed in the company's usual procedure in providing illustrations to agents, had no particular recollection of the transaction with Foisy. With respect to expert opinion, Maccabees' expert testified that he interpreted the contract as a "certain only" annuity. But neither party's expert was impeached, and it is well within the jury's prerogative to accept the testimony of Foisy's expert over that of the company's.

Although we cannot precisely ascertain each individual juror's rationale for finding one expert's testimony more credible than that of another, the record reveals Maccabees' somewhat strained attempt to convince a jury to favor its proffered interpretation - pieced together through multiple cross references - over the more

-13-

straightforward argument that a document which says "life annuity" on the cover is in fact just that.  Particularly in light of the rule - recited in the jury instructions - that "if there are two rational interpretations of policy language, the insured is entitled to the benefit of the one that is more favorable to it," Hazen Paper Co. v. U.S. Fid. and Guar. Co., 407 Mass. 689, 700, 555 N.E.2d 576, 583 (1990), we see no cause to find fault with the jury verdict on the contract claim.

The district court properly denied Maccabees' motion for judgment as a matter of law on the contract claim.

### IV.  Negligent Misrepresentation

Maccabees' final ground of appeal is that the negligent misrepresentation claim fails because the evidence does not demonstrate that Healy was Maccabees' agent and that Foisy reasonably relied on Healy's representations about the policy.[8]

---

[8]The foundation for the negligent misrepresentation claim is that Maccabees, through Healy, represented that the policy provided lifetime benefits when, in fact, it did not.  We note that, in determining that Maccabees breached the contract, the jury had to find that the policy was a certain and continuous life annuity.  It would therefore seem that any statement by Healy to that effect could not be false, meaning that an essential element of the negligent misrepresentation claim was lacking.  Counsel for Maccabees objected to giving any instruction at all on negligent misrepresentation, based on alleged lack of evidence, but did not object - either before the instructions were submitted to the jury or prior to the jury's discharge after rendering a verdict - on the basis of inconsistency.  See Howard v. Antilla, 294 F.3d 244, 247 n.6, 250 (1st Cir. 2002)(barring objection to inconsistent verdict when not raised before discharge of the jury and noting further that appellant failed to object to use of the jury form permitting such inconsistency).  We thus proceed with discussion of the

The jury was asked to make a threshold finding on agency by evaluating four factors: who called Healy to the transaction, who controlled his actions, who paid him, and whose interests he attempted to protect. The judge further explained that although this initial agency question was important, it was not determinative of the claim. Foisy could still prevail if she demonstrated that she relied on false statements in the annuity documents themselves. Because there is insufficient evidence in the record suggesting that Foisy relied primarily on the documents - rather than on Healy's statements - in forming her opinion of the policy's content,[9] we consider the negligent misrepresentation claim only by way of Healy's alleged agency.

Whether an individual has acted as an agent is a question of fact. Pedersen v. Leahy, 397 Mass. 689, 691, 493 N.E.2d 486, 487 (1986). Maccabees contends that under Hudson v. Mass. Prop. Ins. Underwriting Assoc., 386 Mass. 450, 455, 436 N.E.2d 155, 158 (1982)(citations omitted), a broker "is ordinarily the agent of the insured" while an insurance agent usually is deemed to represent the insurer.[10]  See also Couch, supra, at § 45:5 ("Absent some

---

negligent misrepresentation claim as if it did not conflict with the jury's finding on the contract claim.

[9]The only testimony on whether Foisy read the policy was her own somewhat equivocal statement, "Well, I don't know - there's so much on those policies, you don't read all the fine print."

[10]The industry distinction between "broker" and "agent" has the potential to engender confusion with the legal principle of agency.

-15-

special condition or circumstance in the particular case, a broker is not an agent of the insurer . . . ."). By Massachusetts statute, a broker "acts or aids in any manner in negotiating policies of insurance or annuity . . . for a person other than himself," while an agent "solicits insurance on behalf of any company, or transmits for a person other than himself an application for . . . an annuity . . . to or from such company." Mass. Gen. L. ch. 175 § 162. At the most rudimentary level, this distinction means that a broker acts as the "middleman" between insured and insurer, and will not be under the employ of any particular insurance company. Michelson v. Franklin Fire Ins. Co. of Philadelphia, 252 Mass. 336, 359, 147 N.E. 851, 852 (1925); see also Couch, supra, at § 45:1.

As the statutory definitions indicate, however, the title of broker or agent will not always identify the principal. An individual may be considered a broker in the general sense, for example, but nevertheless with respect to a specific transaction be the agent of the insurer. See Am. Country Ins. v. Bernhard Woodwork, 412 Mass. 734, 740, 592 N.E.2d 1319, 1323 (1992) (applying Illinois law, but utilizing the same agency factors considered by the jury in the current case). When evaluating the role of an individual who assumes the characteristics of both agent

With respect to representative capacity, both a broker and an agent may be vested with agency authority; the question is whether the insured or the insurer is the principal.

and broker, we must "look to the agent's conduct in the relevant transaction to determine the nature of the various relationships." Id. at 740.

Healy testified to having three relevant conversations with Foisy over the course of the transaction. The first occurred when Foisy approached him about securing an income stream. The second happened in April 1994, after Maccabees submitted the three different annuity options available for a $40,000 premium. At this meeting, Healy explained the differences between the policies and advocated in favor of purchasing a lifetime annuity with no guaranteed minimum (resulting in a higher monthly payment). Foisy, however, opted for what she and Healy understood to be the five-year certain and continuous plan. The third conversation took place soon after May 16, 1994, the date the policy was issued. At this point, Healy had filled out the portion of Foisy's policy application reserved for the agent, as well as submitted the necessary information to Maccabees to become licensed with the company (necessary for him to serve as the writing agent on Foisy's policy and receive a commission). Healy's testimony indicates that this third conversation happened when the policy was still under a 30-day "free look" period during which Foisy had the option of returning the contract in exchange for a refund of her premium.

At the time of the first two conversations, Healy was undoubtedly acting in his capacity as a broker; he had no prior

relationship with Maccabees and advocated solely on Foisy's behalf. If this were all, the negligent misrepresentation claim would fail because the necessary agency relationship would not have existed at the time the statements were made. The third conversation, however, deserves closer inspection. Healy testified that during this conversation, he continued to advise Foisy to elect the lifetime annuity option. Foisy, still believing she purchased a certain and continuous life annuity, elected to hold the contract because she wanted a beneficiary.

The submission of Healy's licensing information did not automatically render him Maccabees' agent; at most, we believe he was a "special agent for a single purpose." See Couch, supra, at § 45:1. But it does give the jury's agency finding reasonable grounds. By this third conversation, Healy had initiated his relationship with Maccabees, acting at least in part on its behalf in securing Foisy's business. During this third conversation, Foisy continued to rely - to her detriment - on Healy's assurances that she purchased a certain and continuous lifetime annuity.

Furthermore, at the time of the third conversation, the four factors considered by the jury yield an inference more favorable to the verdict than was the case earlier. Although Foisy called Healy into the transaction, Healy now stood to gain from Foisy's purchase. In addition to the commission - paid by Maccabees - Healy would be able to offer Maccabees' products to other clients

(subject to terms controlled by the company).  And, while he may have counseled Foisy to opt for a different Maccabees policy, he did not steer her towards the products of another insurer.

Certainly, the jury could have determined otherwise.  The evidence reasonably would have supported a finding that Healy was Foisy's agent, preventing a finding in her favor on the negligent misrepresentation claim.  Such a result would have been factually consistent with the verdict on the contract claim.  But because we reverse "only if a reasonable person could not have reached the conclusion of the jury," White, 221 F.3d at 259, and lacking any objection to inconsistency by Maccabees, see Babcock v. Gen. Motors Corp., 299 F.3d 60, 63-64 (1st Cir. 2002), we do not find that Maccabees was entitled to judgment as a matter of law.  The district court thus properly denied Maccabees' motion.

Affirmed.