Dino **ZAMBONI** and Susan **Zamboni, Plaintiffs**

v.

**ALADAN CORPORATION** and **Bio–Flex International, Inc., Defendants**

**No. CIV.A. 98–30109–MAP.**

United States District Court, D. Massachusetts.

Feb. 20, 2004.

Mark J. Albano, Dalsey, Ferrara & Albano, Springfield, MA, for Plaintiffs.

Calum B. Anderson, Danaher, Tedford, Lagnese & Neal, P.C., Hartford, CT, Anthony G. Brazil, Morris, Polich & Purdy, Los Angeles, CA, Christopher A. Callanan, Campbell, Campbell, Edwards & Conroy, PC, Boston, MA, Richard L. Edwards, Campbell, Campbell, Edwards & Conroy, PC, Boston, MA, Nancy Roux, Danaher, Tedford, Lagnese & Neal, P.C., Hartford, CT, for Defendants.

*MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT* (Docket Nos. 25 & 29)

PONSOR, District Judge.

## I. *INTRODUCTION*

Plaintiff Dino Zamboni ("Zamboni") suffers from an acute allergy to latex. He and his wife, Susan Zamboni, have instituted this suit against Aladan Corp. ("Ala-

dan") and Bio–Flex International, Inc. ("Bio–Flex"), manufacturers of latex gloves he wore while employed in various positions at Baystate Medical Center ("BMC") in Springfield, Massachusetts. Their five-count complaint alleges: (1) that defendants were negligent in manufacturing, marketing, and distributing their latex gloves and in failing to warn Zamboni adequately of the dangers associated with latex glove use; (2) that defendants breached the implied warranty of merchantability; (3) that plaintiff Susan Zamboni suffered a loss of consortium as a result of defendants' negligence; (4) that defendant Aladan engaged in unfair and deceptive acts and practices prohibited by Mass. Gen. Laws ch. 93A, §§ 2, 9; and (5) that defendant Bio–Flex engaged in unfair and deceptive acts and practices prohibited by Mass. Gen. Laws ch. 93A, §§ 2, 9.

Defendants have moved for summary judgment on all five counts based on the statute of limitations. In a case such as this invoking diversity jurisdiction, Massachusetts law applies. *Foisy v. Royal Maccabees Life Ins. Co.*, 356 F.3d 141 (1st Cir.2004); *Pitts v. Aerolite SPE Corp.*, 673 F.Supp. 1123, 1127 (D.Mass.1987). Massachusetts law requires that tort actions, or contract actions to recover for personal injuries, be brought within three years after the cause of action accrues. Mass. Gen. Laws ch. 260, § 2A. Consumer protection actions brought under Chapter 93A, on the other hand, must be commenced within four years after accrual. *Id.* § 5A.

For the reasons set forth below, the court will allow, in part, the defendants' motions for summary judgment.

## II. *FACTUAL BACKGROUND*

A court may only grant summary judgment where the moving party has demonstrated that there are no genuine issues of material fact for trial and, therefore, that it is entitled to judgment as a matter of law. *Dasey v. Anderson*, 304 F.3d 148, 153 (1st Cir.2002). The court must examine the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* Accordingly, the facts set out below reflect the record as construed most favorably for the plaintiff.

On October 4, 1993, Zamboni began work at BMC as a "psych sitter," a position in which he oversaw patients under psychiatric evaluation. Occasionally, the job's responsibilities required Zamboni to don latex gloves when handling a patient. A few months after starting work, on February 15, 1994, Zamboni visited the employee health clinic at BMC with a rash on his face. The medical record of that visit documents that Zamboni suspected that the rash developed after his wife began using a new laundry detergent. The attending physician asked Zamboni if he had ever had rashes develop after contact with other latex products, such as toy balloons, to which Zamboni responded in the negative. The physician concluded that the rash may have developed as a reaction to the powder in the latex gloves Zamboni wore. The doctor advised Zamboni to use powder-free gloves in the future.

On April 10, 1994, Zamboni transferred to the position of orderly. This new position required him to wear gloves almost all the time to protect himself from his increased contact with patients. On June 10, 1994, Zamboni returned to the health clinic, this time with a rash on his hands. The medical records for this visit state that this rash differed from the earlier rash on his face. A few days later, Zamboni again reported to the clinic for treatment because the rash on his hands had worsened.

Zamboni worked as an orderly for approximately one year. Throughout this time, Zamboni continued to suffer great discomfort from the skin condition on his hands. He described his hands as having "fissures" and "bleeding" and cracking. (Docket No. 28, App. A at 23.) Prior to his employment at BMC, Zamboni never had suffered from such a skin problem. During this period, BMC repeatedly provided Zamboni with different gloves to try to alleviate his condition. Zamboni generally used powder-free latex gloves, though in an emergency, if no other gloves were on hand, Zamboni used whichever gloves were immediately available.

Zamboni alleges—and Aladan does not dispute—that some of the gloves he wore were manufactured by Aladan. Bio–Flex, in contrast, contends that it did not sell gloves of *any* kind to BMC until after April 11, 1995, and then only sold powder-free latex gloves. Notwithstanding Bio–Flex's contention, Zamboni testified in his deposition that, during his time as an orderly, he wore latex powdered and powder-free gloves manufactured by *both* Aladan and Bio-flex. Furthermore, Zamboni asserts that his skin problem persisted whether he wore, or was exposed to, powdered or powder-free latex gloves.

Three months into his time as an orderly, in June 1994, the employee health clinic referred Zamboni to a dermatologist. Medical records dated June 22, 1994, indicate that the dermatologist tentatively diagnosed his skin problem as eczematous dermatitis. The record also states that "he had an allergic reaction to Latex gloves but not on his hands but rather on his face. In any case he's now using non-powdered gloves." (Docket No. 32, App. F.) Later, in November of 1994, Zamboni visited the emergency room of BMC for a non-work related burn that he sustained on his arm. In records from that visit, the

phrase "latex gloves?" was written under the heading "allergies."

In November 1994, the dermatologist's office noted that Zamboni should be patch tested to see if the gloves he had been using were playing any role in causing his skin condition. After another visit to BMC's employee clinic on December 5, 1994, Zamboni was authorized to return to work with the restriction that he wear powder-free vinyl gloves and cotton liners. Despite treatment from both medical professionals at the health clinic and at the dermatologist, Zamboni's skin condition did not improve.

On March 26, 1995, BMC transferred Zamboni to the position of cardiac monitor observer ("CMO"). Zamboni testified that the reason behind this transfer was to remove him from the clinical environment in an effort to stop his skin reactions. Initially, Zamboni's symptoms greatly abated. Within a few weeks, however, his allergy symptoms returned, this time with newly developed respiratory problems. Though he was not using latex gloves (unless no other gloves were on hand in an emergency) a rash reappeared on his skin, his hands swelled, and he began having difficulty breathing.

Defendants have anchored their contention that Zamboni had notice of the cause of his skin problems partly on the timing of his academic pursuits. In 1992, Zamboni enrolled in a two-year nursing program at Springfield Technical Community College ("STCC"). In the fall of 1993, around the time that he started as a "psych sitter" at BMC, Zamboni registered for five classes in pursuit of his degree, though he withdrew from three of these shortly thereafter. The following spring semester, in 1994, he registered for only one course, but at some point before April 22, 1994, he withdrew from that course as well. That summer, Zamboni was accept-

ed to the department of "liberal arts/general studies/health career core" for the fall semester of 1994. (Docket No. 48, App. B.)

Defendants argue that the undisputed facts of record confirm that Zamboni withdrew from his classes in the spring of 1994 because he *knew* at that point that he was allergic to latex and, therefore, could not complete the clinical requirements of the nursing program. They point to a portion of Zamboni's deposition testimony where he stated that he eventually left the nursing program altogether because the clinical aspect of the program required him to use gloves. In fact, the deposition testimony is not quite so clear. When asked why he had withdrawn from his classes, Zamboni stated that he quit school because of his hands, adding, "I couldn't concentrate; I was in pain; I had my eczema problem, so-called what they said, and it was just—then I was on medication, and I just lost all concentration and everything; and I was very depressed because of that." (Docket 32, App. C at 73.)

Zamboni did admit at his deposition that he had begun to suspect latex gloves caused his skin problems *during* his work as an orderly, sometime between April 1994 and March 1995. He further testified that, throughout this period, he told his wife about his skin problem, his diagnosis, and his treatment. She knew of all these problems as he went through them.

Zamboni was positively diagnosed with an allergy to latex in the fall of 1997. His allergy included a reactivity to airborne particles. In the fall of 1997, Zamboni's continued reactions resulted in his leaving the clinical environment at BMC for a position in administration, where he would no longer be exposed to latex gloves. On June 8, 1998, Zamboni and his wife filed this cause of action.

### III. DISCUSSION

■ Defendants, as noted, contend that this lawsuit was filed too late. When a defendant raises the statute of limitations, the burden rests on the plaintiff to demonstrate that his claim is not time barred. *Albrecht v. Clifford,* 436 Mass. 706, 715, 767 N.E.2d 42 (2002). The plaintiffs must establish the facts that take their case "outside the impact of the statute of limitations." *Shahzade v. Gregory,* 930 F.Supp. 673, 675 (D.Mass.1996).

#### A. Statute of Limitations

■ Plaintiffs' common law claims must be brought "within three years ... after the cause of action accrues," Mass. Gen. Laws ch. 260, § 2A; their Chapter 93A claims must be brought within four years after accrual, *id.* § 5A. Because the phrase "when a cause of action accrues" is not defined in the statute, the courts of Massachusetts have interpreted the phrase as the time when the plaintiffs "(1) knew or had sufficient notice that [they were] harmed; and (2) knew or had sufficient notice of the cause of the harm." *Lindsay v. Romano,* 427 Mass. 771, 774, 696 N.E.2d 520 (1998) (internal citations omitted).

■ Thus, there are two types of knowledge that the plaintiffs must have for the statute to run. The plaintiffs must have, first, an awareness of the injury and, second, an awareness that the defendants caused the injury. *Doe v. Creighton,* 439 Mass. 281, 283, 786 N.E.2d 1211 (2003). Plaintiffs do not quarrel with defendants' contention that Zamboni and his wife knew of the *injury* more than four years before filing suit. The plaintiffs are adamant, however, that they lacked sufficient notice of the *cause* of their injury until after June 8, 1995, three years prior to filing this lawsuit.

Under Massachusetts law, the discovery rule tolls the limitations period until a plaintiff recognizes, or reasonably should have recognized, "some causal connection between the defendant's actions and [his] injury." *Foisy*, 356 F.3d at 147. Whether a plaintiff has knowledge or notice of his injury and the causes of the injury is determined by using a reasonable person standard. *Riley v. Presnell*, 409 Mass. 239, 245, 565 N.E.2d 780 (1991). Therefore, even if a plaintiff does not subjectively know of his injury or the cause of his injury, if circumstances exist such that the plaintiff reasonably *should* have known, then the statute of limitations is not tolled.[1] *Id.* at 245, 565 N.E.2d 780.

The discovery rule is designed to protect a plaintiff's cause of action under circumstances where the plaintiff suffers from an injury whose origin is unknown. *Lindsay v. Romano*, 427 Mass. 771, 775 n. 4, 696 N.E.2d 520 (1998), (reversing a district court's granting of summary judgment because, though the plaintiff's first lawyer sent a letter to the defendant accusing him of malpractice months after the surgery, the cause of plaintiff's injury was not definitively ascertained for four years, after eight different doctors and a second surgery). The rule tolls the statute of limitations while the plaintiff undertakes a reasonable inquiry into the source of his injury. *See Cambridge Plating Co., Inc. v. Napco, Inc.*, 991 F.2d 21, 28 (1st Cir.1993). Thus, the discovery rule, while affording some protection to a plaintiff, also imposes on him an obligation to investigate the cause of his injury. *Bowen v. Eli Lilly & Co., Inc.*, 408 Mass. 204, 210, 557 N.E.2d 739 (1990) (stating that "[r]easonable notice that a particular product or a particu-

lar act of another person may have been a cause of harm to a plaintiff creates a duty of inquiry"); *Martinez v. Sherwin Williams Co.*, 50 Mass.App.Ct. 908, 909, 737 N.E.2d 927 (2000) (granting summary judgment for defendant where plaintiff "did not seek answers until ... more than six years after her first symptoms appeared").

Once a plaintiff has knowledge or notice of his injury and its cause, the cause of action begins to accrue—even if the plaintiff does not apprehend the full extent or nature of the injury. *Phinney v. Morgan*, 39 Mass.App.Ct. 202, 208, 654 N.E.2d 77 (1995). It is only while the facts, as opposed to the "legal theory for the cause of action," remain unknown that the discovery rule tolls the statute of limitations. *Saenger Org., Inc. v. Nationwide Ins. Licensing Assocs., Inc.*, 119 F.3d 55, 65 (1st Cir.1997) (internal citations omitted).

When the discovery rule is at issue, the plaintiff "bears the burden of proving both an actual lack of causal knowledge and the objective reasonableness of that lack of knowledge." *Creighton*, 439 Mass. at 283, 786 N.E.2d 1211. Hence, the plaintiff bears the burden of supplying proof in the summary judgment record to show that his action is timely. *Phinney*, 39 Mass.App.Ct. at 209, 654 N.E.2d 77. Where a genuine dispute exists, the question whether a plaintiff knew or should have known of the cause of his injury is generally for the jury to decide. *See Albrecht*, 436 Mass. at 714–15, 767 N.E.2d 42.

## B. *Plaintiffs' Claims*

Defendants' argument as to the common law claims is founded on different evidence

---

1. The "knew or should have known" standard is sometimes phrased as the "inherently unknowable" standard. *Albrecht v. Clifford*, 436 Mass. 706, 714, 767 N.E.2d 42 (2002). A claim will not accrue "if the factual basis for it was 'inherently unknowable.'" *Foisy*, 356 F.3d at 147.

than that relied on for the Chapter 93A claims. Thus, the statute of limitations argument for the common law claims will be discussed first, followed by a discussion of the plaintiffs' Chapter 93A claims. Defendant Bio–Flex's separate argument regarding the date of its first sale to BMC will be discussed last.

### 1. *Plaintiffs' Common Law Claims*

 Because plaintiffs filed their complaint on June 8, 1998, their claims for negligence, breach of the implied warranty of merchantability, and loss of consortium are barred by the applicable statute of limitations if plaintiffs had reasonable notice of Zamboni's latex allergy before June 8, 1995. *See* Mass. Gen. Laws ch. 260, § 2A.

It is apparent from the record that these common law claims are timed barred. Medical records from Zamboni's visit to the emergency room in November of 1994 reveal that he believed he suffered from an allergy to latex. In addition, Zamboni admitted at his deposition that he knew of a possible allergy to latex while he was an orderly, a position he left in March of 1995. Thus, the record establishes that plaintiffs knew of the cause of Zamboni's skin reactions by March 1995 at the latest, three years *and three months* prior to the filing of the lawsuit. Defendants' Motions for Summary Judgment, therefore, must be allowed with respect to plaintiffs' common law claims.

### 2. *Plaintiffs' Chapter 93A Claims*

 Defendants' arguments regarding plaintiffs' Chapter 93A claims are far less compelling. Since, the statute of limitations for claims brought under Chapter 93A is four years, the crucial date on these counts is June 8, 1994. The determination of whether, by June 8, 1994, Zamboni knew or should have known that he had an allergy to latex is close; there is evidence supporting the positions of both the defendants and the plaintiffs.

The defendants' argument for allowing summary judgment rests on the premise that Zamboni knew in the spring of 1994 that latex caused his skin reactions. In Zamboni's first visit to the employee health clinic, the doctor pinpointed the gloves as a possible source of his skin reactions. Also, Zamboni's skin problems were so severe by the spring of 1994 that he withdrew from his class at STCC. The defendants assert Zamboni withdrew because he knew he could not complete the clinical requirements due to his latex allergy. Thus, according to the defendants, Zamboni knew of his latex allergy *prior* to June 1994.

Defendants argue alternatively that even if Zamboni did not know he was allergic to latex, he should have known by the spring of 1994 to look into the matter more closely. The statute of limitations begins to run upon notice to the plaintiff that he has an injury and some causal connection exists between the defendants' products and plaintiff's injury. The defendants contend that Zamboni had enough information in the spring of 1994 to put him on notice of his cause of action. Consequently, their argument goes, the statute of limitations began to run before June 8, 1994, and the plaintiffs' complaint was not timely.

Strong evidence, however, supports the plaintiffs' contention that they did not have reasonable grounds to conclude that a latex allergy was causing Zamboni's rash until after June 8, 1994. In the spring of 1994, Zamboni had been told by doctors at the employee health clinic that he had eczema, not an allergy. In addition, in Zamboni's next visit to the clinic on June 10, 1994, the doctor characterized Zamboni's skin condition on his hands as different

from the one he presented in the spring. Therefore, a jury could reasonably conclude that Zamboni and his wife logically regarded his earlier facial rash as unrelated to his later problems with his hands.

As for the reason behind Zamboni's withdrawal from classes in the spring of 1994, the record does not support the defendants' position as clearly as they would have it. Zamboni stated in his deposition that he withdrew from his class in the spring of 1994 because of his hand condition, not because of the clinical requirements. In addition, his academic records indicate that Zamboni intended to enroll in classes for the 1994 fall semester. Zamboni's testimony can be characterized at best as ambiguous about his knowledge of the cause of his skin condition. He had only been an orderly for a few months and his earlier visit to the doctor resulted in a diagnosis of eczema. This evidence could support a jury finding that Zamboni did not withdraw from his class at STCC because he realized he had an allergy to latex.

■ Likewise, a jury could reasonably conclude that Zamboni did not have sufficient information before June 8, 1994, to put him on notice of his cause of action. The discovery rule protects a plaintiff who conducts a reasonable inquiry into the cause of his injury. *Cambridge Plating Co.*, 991 F.2d at 26–27. Zamboni sought care repeatedly from the employee health clinic at BMC, as well as from dermatologists, all of whom repeatedly diagnosed the cause of his problems as non-latex related. This is not a case where the plaintiff "essentially did nothing to investigate the cause of his injury." *Lindsay*, 427 Mass. at 775 n. 4, 696 N.E.2d 520. In light of medical opinions that failed to identify latex as the source of his skin condition, a jury could reasonably conclude that Zam-

boni did not have notice of the cause of his injury.

The standard on summary judgment requires that all reasonable inferences be drawn in plaintiffs' favor. Here, the record is replete with "sketchy information" about the circumstances surrounding Zamboni's growing awareness of the cause of his skin reactions. *Cambridge Plating*, 991 F.2d at 30. The court cannot say with confidence that no reasonable jury could conclude that Zamboni did not know or have notice of the cause of his injury before June 8, 1994. For this reason, the statute of limitations issue will remain for a jury to decide. Defendants' Motions for Summary Judgment on plaintiffs' Chapter 93A claims will be denied.

### 3. *Bio–Flex's Argument*

■ Finally, defendant Bio–Flex submitted an affidavit asserting that it did not sell gloves of any kind to BMC until after April 11, 1995—well after plaintiff knew or should have known that he was allergic to latex. On the other hand, Zamboni has testified that, while working as an orderly, he used both latex powder and powder-free gloves and that these gloves were made by both Aladan and Bio–Flex. There is also evidence in the record suggesting that BMC periodically supplied Zamboni with gloves to wear that were different from the ones generally available on the floor of the hospital. Zamboni's deposition testimony has established a material dispute of fact. Consequently, defendant Bio–Flex's motion for summary judgment must be denied.

### IV. *CONCLUSION*

For the reasons set forth above, defendants' Motions for Summary Judgment are hereby ALLOWED as to plaintiffs' claims for negligence, breach of the implied warranty of merchantability, and loss of con-

sortium, and DENIED as to plaintiffs' claims under Chapter 93A. The clerk will set the case for a status conference.

It is So Ordered.